**Delbert Eugene WATSON, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 10S00–9405–CR–441.

Supreme Court of Indiana.

Dec. 5, 1995.

---

Dawn R. Elston, Chief Public Defender, Jeffersonville, for Appellant.

Pamela Carter, Attorney General, Preston W. Black, Deputy Attorney General, Indianapolis, for Appellee.

## ON DIRECT APPEAL

DICKSON, Justice.

Defendant Delbert Watson was convicted of the April 3, 1993, murder of Raymond Halladay and battery of Lucille Halladay. In this direct appeal, the defendant asserts error as to: (1) sufficiency of evidence; and (2) denial of further psychological testing. We affirm the conviction.

### Sufficiency of the Evidence

■ The defendant claims that the evidence was insufficient to sustain his conviction for murder. He argues that the decedent's injuries could have come from other sources and that evidence of the defendant's opportunity to commit the crime and his presence when the crime was committed is not enough to support the conviction. The defendant also maintains that there was no evidence of intent to kill, arguing that he was intoxicated and that the death was accidental.

■ A claim of insufficient evidence will prevail if, considering the evidence and all reasonable inferences therefrom which support the judgment, and without weighing evidence or assessing witness credibility, we conclude that no reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. *Case v. State* (1984), Ind., 458 N.E.2d 223, 226; *Loyd v. State* (1980), 272 Ind. 404, 407, 398 N.E.2d 1260, 1264, *cert. denied*, 449 U.S. 881, 101 S.Ct. 231, 66 L.E.2d 105. *See also Smith v. State* (1988), Ind., 531 N.E.2d 1162, 1163.

A conviction for murder requires proof that the defendant knowingly or intentionally killed the decedent. *See* Ind.Code § 35–42–1–1. A person "intentionally" engages in particular conduct when "it is his conscious objective to do so." Ind.Code § 35–41–2–2(a). A person "knowingly" engages in particular conduct when "he is aware of a high probability that he is doing so." Ind.Code § 35–41–2–2(b).

The evidence supporting the conviction is substantial. The defendant "body slammed," kicked, hit, "stomp[ed] on," and jumped upon the decedent and placed his foot on the decedent's neck. *See* Record at 344–45, 432, 461, 473. The decedent, missing both hands and a foot because of amputations, did not move during the assault, and had a blood alcohol content of .42% at the time of his death. Record at 192, 200, 393, 473. The defendant tried to prevent onlookers from intervening or calling the police. Record at 347–48, 355–56, 437, 476. In a telephone call to his uncle, the defendant stated that he thought he had killed the decedent. Record at 348–49.

■ Another individual, Albert Wilson, testified to having kicked the decedent himself once earlier that day. Record at 346. However, it was not necessary for the State to prove that the defendant's acts were the sole cause of the decedent's death. The State merely needed to introduce sufficient evidence from which a reasonable jury could conclude beyond a reasonable doubt that the defendant's acts contributed, whether mediately or immediately, to the victim's death. *See Bivins v. State* (1970), 254 Ind. 184, 188–89, 258 N.E.2d 644, 646 (holding that defendant is responsible for decedent's death if the injury which he inflicted contributed to death, even if other causes also contributed).

*See also Tynes v. State* (1995), Ind., 650 N.E.2d 685, 686–87. Furthermore, the autopsy indicated that the decedent had sustained cuts and bruises to the head, multiple fractures of the mandible (the lower jaw bone), a fractured hyoid bone (which is attached to the voice box), a lacerated liver, and various internal injuries, with his death resulting from aspiration of blood and internal hemorrhaging. Record at 384–85. These injuries are inconsistent with the defendant's claim that the decedent fell from a chair. Record at 386.

Clearly, the evidence was sufficient for a reasonable jury to find the defendant guilty of murder beyond a reasonable doubt.

### Psychological Testing

■ The defendant contends that the trial court abused its discretion and denied him a fair trial and equal protection when it denied his pre-trial motion for further psychological testing. The State contends that providing two court-appointed psychiatrists was sufficient, that whether to provide additional testing was within the trial court's discretion, and that the denial of the defendant's request was not an abuse of that discretion.

On August 31, 1993, three months before the commencement of his jury trial, the defendant filed a Notice of Intent to Interpose Insanity Defense. Pursuant to Indiana Code § 35–36–2–2, the trial court appointed two psychiatrists, Dr. Nasir Siddiqui and Dr. Mary Bouldin, to examine the defendant. The psychiatrists were to testify at trial following both parties' presentation of evidence and to be subject to cross-examination by both the State and the defense. After examining the defendant, the psychiatrists filed reports on November 8 and 15, 1993. Dr. Siddiqui reported that the defendant did not have any chronic mental illness, psychosis, or thought disorder and that he "may have been

sane at the time of the commission of the offense." Record at 526. However, he recommended a review of the defendant's earlier evaluation at Madison State Hospital "for further assessment of his organic functioning" and suggested "a possible need of a repeat EEG, a CAT Scan or MRI." Record at 526. Dr. Bouldin's report advised that it was "not clear at this time" whether the defendant "meets the criteria for the insanity defense" and stated that additional testing may "help further clarify" this issue. Record at 514. On November 19, 1993, the defendant filed a Motion for Further Psychological Testing, which the trial court denied. He unsuccessfully renewed the motion on the morning of trial. Both psychiatrists testified at trial, Dr. Bouldin concluding that the defendant "was sane at the time the act was committed," Record at 512, and Dr. Siddiqui stating that the defendant "might have been sane." Record at 524. During cross-examination by the defense, Dr. Bouldin acknowledged that she considered it unclear at the time of her report "whether he [met] the criteria for the insanity defense" and that further testing "may help clarify" the question. Record at 519. Dr. Siddiqui stated during cross-examination that he recommended further testing be done because it was possible that the defendant has an organic impairment which, if it exists, could result in "an explosive impulse." Record at 537–38. Neither psychiatrist testified concerning whether additional testing would affect their opinions regarding the defendant's eligibility for Indiana's insanity defense.[1]

The defendant argues that the trial court's denial of his motion for further testing violated the rule that "when a defendant has made a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial, the [United States] Constitution requires that a State provide access to a psychiatrist's assistance on this issue, if the

---

1. In order for a defendant's insanity defense to prevail, he must show that "as a result of mental disease or defect, he was unable to appreciate the wrongfulness of the conduct at the time of the offense." Ind.Code § 35–41–3–6(a). The statute requires more than repeated antisocial conduct to demonstrate insanity, defining "mental disease or defect" as "a severely abnormal mental condition that *grossly* and *demonstrably* impairs a person's perception." *Id.* (emphasis added). *See also Cate v. State* (1994), Ind., 644 N.E.2d 546, 547.

defendant cannot otherwise afford one." *Ake v. Oklahoma* (1985), 470 U.S. 68, 74, 105 S.Ct. 1087, 1091–92, 84 L.Ed.2d 53, 60. While it may be considered an open question whether *Ake* applies to non-capital cases,[2] we nonetheless conclude that the *Ake* requirement was satisfied here. Upon the filing of the defendant's Notice of Intent to Interpose Insanity Defense, the trial court, as required by statute, Ind.Code § 35–36–2–2, appointed two psychiatrists, both of whom were available to assist the defense on this issue. *Ake* does not address the extent to which trial courts must provide supplemental testing, and we decline to extend it to the circumstances of the present case.

■ Acknowledging that the appointment of an expert at state expense is a matter within the discretion of the trial court, *see Schultz v. State* (1986), 497 N.E.2d 531, 533, the defendant argues that the trial court's denial of the requested additional assistance constituted an abuse of discretion. Considering the substance of the psychiatrists' reports and testimony and the absence of demonstrated medical necessity for the requested testing, we decline to conclude that the trial court abused its discretion.

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DeBRULER, SULLIVAN and SELBY, JJ., concur.

---

**2.** Although the lead opinion in *Ake* notes that "[t]he private interest in the accuracy of a criminal proceeding that places an individual's life *or liberty* at risk is almost uniquely compelling," *Ake,* 470 U.S. at 78, 105 S.Ct. at 1093, 84

L.Ed.2d at 63 (emphasis added), Chief Justice Burger stated in his concurrence that "[n]othing in the Court's opinion reaches noncapital cases." *Id.* at 87, 105 S.Ct. at 1098, 84 L.Ed.2d at 69.