**Benton BARBER, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A02–0608–CR–689.**

Court of Appeals of Indiana.

April 9, 2007.

---

Ruth Johnson, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Gary Damon Secrest, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Benton Barber appeals his convictions and sentence for two counts of reckless homicide and one count of failure to stop after an accident resulting in death. We conclude that the evidence is sufficient to support Barber's convictions, that the trial court did not abuse its discretion in sentencing Barber, and that Barber's sentence is not inappropriate in light of the nature of his offenses and his character. Furthermore, because, as this Court held in *White v. State*, 849 N.E.2d 735 (Ind.Ct. App.2006), *reh'g denied, trans. denied,* Indiana Code § 35-50-2-1.3 adds no restrictions on the ability of trial courts to impose consecutive sentences beyond the restrictions already in place by virtue of

Indiana Code § 35-50-1-2(c), the trial court did not err in imposing consecutive maximum sentences for Barber's two reckless homicide convictions. Therefore, we affirm the judgment of the trial court.[1]

### Facts and Procedural History

At 11:49 a.m. on March 21, 2004, seventeen-year-old Lindsey Thompson ("Thompson") was driving south on I–465 in Indianapolis with a passenger, fifteen-year-old Kevin Gregg. The road was wet, and Thompson was driving in excess of the speed limit of fifty-five miles per hour when she came upon the forty-one-year-old Barber, who was driving the speed limit in the far right lane. As Thompson quickly approached Barber from behind, Barber, who was driving with his wife and thirteen-year-old son, "slammed" on his brakes. Tr. p. 57. As Thompson passed Barber in the middle lane, Gregg gave Barber "the finger." *Id.* at 175. Thompson re-entered the far right lane in front of Barber. Barber then pulled into the middle lane, accelerated to catch up with Thompson, gave Thompson and Gregg "the finger," *id.* at 176, and began "weaving" his car toward Thompson, *id.* at 150. According to Barber's wife, Barber then "cut [Thompson and Gregg] off, got in front of them a little bit too close. [Thompson] was like tailgating and then [Barber] hit the brake." *Id.* As Thompson began to move her vehicle to the left toward the middle lane, Barber "swerve[d]" to the left and came within "a couple feet" of Thompson's vehicle. *Id.* at 33–34. When Thompson moved to avoid Barber, she lost control of her car, crossed the grassy median, and collided head-on with a truck pulling a horse trailer. Thompson and Gregg both died at the

**1.** We heard oral argument in this cause on March 23, 2007, at Valparaiso University School of Law. We thank counsel for traveling to Valparaiso from Indianapolis and for their excellent advocacy, and we again extend our gratitude to the students, faculty, and staff of the law school for hosting the event.

scene from "blunt force trauma." *Id.* at 105.

The collision occurred just north of the 56th Street exit off of I–465. After Thompson lost control of her car, Barber "slowed down to look at the accident," *id.* at 34, but then sped up to "75 to 80 mile an hour," *id.* at 36. Despite having ample room on the shoulder to pull his car over, Barber continued down the interstate and exited at 38th Street. An eyewitness followed Barber off of the interstate and into the parking lot of a restaurant. The eyewitness told Barber that he should return to the scene of the accident, and Barber responded that he "had nothing to do with it." *Id.* at 75. When the eyewitness said that Thompson and Gregg had been killed, Barber stated, "No, they weren't." *Id.* at 181. Barber eventually promised to return to the scene of the collision, but when he reached the on-ramp for I–465, he drove past and continued home. When he arrived home, Barber called the police and told them about the collision. The Indiana State Police officer investigating the incident indicated that it was Thompson's act of following too closely that was the primary cause of the collision. *See* Ex. p. 14.

The State charged Barber with two counts of reckless homicide, a Class C felony,[2] and one count of failure to stop after an accident resulting in death, also a Class C felony.[3] After a bench trial, the trial court found Barber guilty as charged. In sentencing Barber, the trial court identified two aggravating circumstances—Barber's criminal history and the fact that Barber was on probation when he committed the instant offenses—and three mitigating circumstances—Barber's remorse, Barber's "health conditions," Tr. p. 262, and the fact that Barber had been suffering from depression. Finding that the aggravators outweigh the mitigators, the trial court imposed the maximum sentence of eight years for each offense. The court ordered the sentences for the two reckless homicide convictions to run consecutively with the sentence for failure to stop to run concurrently. Finally, the trial court suspended eight of the sixteen years and ordered four years of probation. Barber now appeals.

## Discussion and Decision

On appeal, Barber argues that (1) the evidence is insufficient to support his convictions for reckless homicide and failure to stop after an accident resulting in death and (2) the trial court improperly sentenced him.

### I. Sufficiency of the Evidence

Barber first argues that the evidence is insufficient to support his convictions for reckless homicide and failure to stop after an accident resulting in death. Upon a challenge to the sufficiency of evidence to support a conviction, a reviewing court does not reweigh the evidence or judge the credibility of witnesses. *McHenry v. State*, 820 N.E.2d 124, 126 (Ind.2005). We must consider only the probative evidence and reasonable inferences supporting the verdict. *Id.* We must affirm if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Id.*

### A. Reckless Homicide

■ Barber asserts that the evidence is insufficient to support his convictions for reckless homicide. Indiana Code § 35–42–1–5 provides that "[a] person who recklessly kills another human being commits reckless homicide, a class C felony." "A

**2.** Ind.Code § 35–42–1–5.

**3.** Ind.Code § 9–26–1–8(a)(2).

person engages in conduct 'recklessly' if he engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct." Ind.Code § 35–41–2–2. "Proof that an accident arose out of the inadvertence, lack of attention, forgetfulness or thoughtlessness of the driver of a vehicle, or from an error of judgment on his part, will not support a charge of reckless homicide." *Beeman v. State*, 232 Ind. 683, 690, 115 N.E.2d 919, 922 (1953).

As Barber notes, the trial court concluded that Barber's final swerve to the left caused Thompson to lose control over her car. Barber argues that his movement to the left was "an error in judgment which would be negligence but not recklessness." Appellant's Br. p. 10. In support of this argument, Barber directs us to this Court's opinion in *Whitaker v. State*, 778 N.E.2d 423 (Ind.Ct.App.2002), *trans. denied.*

Whitaker followed two to four car lengths behind a car driven by Cox and traveled at around sixty miles per hour, which was five miles per hour above the speed limit. The weather was clear and the pavement was dry. Cox began braking and signaled that she was going to turn left. Whitaker did not attempt to apply his brakes or otherwise evade Cox until almost the precise moment he struck her car in the rear. This propelled Cox's car into the oncoming lane of traffic, where it was run over by a dump truck. Cox died instantly, and Whitaker was convicted of reckless homicide.

Whitaker appealed, arguing that the evidence was insufficient to support his conviction. Apparently relying on Whitaker's testimony to the effect that he failed to notice that Cox was stopped until it was far too late for him to stop or avoid her car, the State posited "that the fact Whit-aker failed to take any action to stop or evade Cox's car after she applied her brakes and signaled to turn is, in itself, evidence of his recklessness." *Id.* at 428. We rejected this argument, noting that this "would be evidence of inadvertence or lack of attention; in other words, negligence, not recklessness." *Id.* (citing *Beeman*, 232 Ind. at 690, 115 N.E.2d at 922). We further noted the State's urging to the jury that Whitaker did see Cox stopped in front of him but calculated, erroneously, that she would turn before he reached her. We stated that even if this were true, it would represent a gross error in judgment, and such an error constitutes negligence, not recklessness. *Id.* (citing *Beeman*, 232 Ind. at 690, 115 N.E.2d at 922). In reversing Whitaker's conviction, we concluded, "In short, this case involves a non-intoxicated, well-rested truck driver who drove slightly above the speed limit and arguably followed too closely behind another vehicle on a clear, dry day, with undeniably tragic results." *Id.*

The instant case is distinguishable from *Whitaker*. First, there is evidence that Barber's involvement in the collision did not arise from inadvertence or lack of attention. Eyewitness Gregory Robinson testified that as Thompson began to move her vehicle to the left toward the middle lane, Barber "swerve[d]" to the left and came within "a couple feet" of Thompson's vehicle. Tr. p. 33–34. Barber testified that he simply intended to move into the center lane to allow Thompson to pass him, but the trier of fact, in this case the trial court judge, did not believe Barber, and it is not the province of this Court to reweigh the evidence or to judge the credibility of witnesses.

Second, the evidence supports a finding that Barber's conduct did not result from a mere error in judgment, or even a "gross error in judgment," which, as we said in

*Whitaker*, would constitute only negligence, not recklessness. 778 N.E.2d at 428 (citing *Beeman*, 232 Ind. at 690, 115 N.E.2d at 922). After Thompson passed Barber and Gregg gave Barber the finger, Barber made the conscious decision to speed up and prolong the encounter. *That* was an error in judgment. However, Barber did not stop there. Rather, on a wet road at speeds in excess of the posted speed limit, Barber pulled closely in front of Thompson, then swerved to the left when she went to pass him in the middle lane, causing Thompson to lose control and cross the median. This evidence supports a finding that Barber's actions were reckless, that is, that they were perpetrated in plain, conscious, and unjustifiable disregard of harm that might result and that they constituted a substantial deviation from acceptable standards of conduct. *See* I.C. § 35–41–2–2.

■ We acknowledge the fact that Thompson's own aggressive driving likely contributed to her and Gregg's deaths. Indeed, the investigating officer listed Thompson's following too closely as the primary cause of the accident. However, a defendant's conduct need not be the sole cause of a death in order to support a conviction for reckless homicide. The State must only prove that the defendant's conduct was *a* proximate cause of the victim's death. *See Abney v. State*, 766 N.E.2d 1175, 1178 (Ind.2002); *see also Watson v. State*, 658 N.E.2d 579, 580 (Ind. 1995) ("[I]t was not necessary for the State to prove that the defendant's acts were the sole cause of the decedent's death."); *Bivins v. State*, 254 Ind. 184, 188, 258 N.E.2d 644, 646 (1970) ("The fact that other causes may also have contributed to the death does not relieve the actor of responsibility.").

Finally, we note Barber's contention that his conduct was not reckless because he did not leave his lane the last time he swerved at Thompson or violate any traffic laws. Barber has failed to cite any authority for the proposition that a driver cannot be convicted of reckless homicide unless he leaves his lane or violates some specific traffic law, and we can find none. Surrounding circumstances can make otherwise lawful conduct reckless. For example, moving from side to side within one's own lane may not be reckless on a dry road at thirty miles an hour with no cars in the vicinity, but such movement may be reckless on a wet road at sixty-five miles per hour with another car within a few feet, as happened here. *See Whitaker*, 778 N.E.2d at 426 ("Speed may support a reckless homicide conviction, but only greatly excessive speeds, such as twenty or more miles per hour over the posted speed limit, *or where inclement weather and poor road conditions render higher speeds greatly unreasonable.*") (emphasis added). The evidence is sufficient to support Barber's convictions for reckless homicide.

**B. Failure to Stop**

■ Barber also maintains that the evidence is insufficient to support his conviction for failure to stop after an accident resulting in death. Indiana Code § 9–26–1–1 provides that a driver involved in an accident resulting in injury or death must do the following: (1) stop the vehicle immediately; (2) remain at the scene; (3) give his or her name, address, and vehicle identification number; (4) exhibit his or her driver's license upon request; (5) render reasonable assistance to persons injured in the accident; (6) immediately notify the appropriate law enforcement authority; and (7) forward a written report of the accident to the state police department within ten days of the accident. "Inasmuch as the elements are listed in the conjunctive, a person commits a criminal offense in failing to adhere to

any one of the requirements." *Nield v. State,* 677 N.E.2d 79, 81 (Ind.Ct.App. 1997). Barber failed to stop his vehicle immediately or remain at the scene. On appeal, he offers two explanations for these failures.

First, Barber argues that he was not "criminally responsible" for the collision and therefore should not be guilty of failing to stop. Amended Appellant's Br. p. 12. However, Indiana Code § 9–26–1–1 does not require that a driver be "criminally responsible," or responsible for the accident at all, before the duty to stop and remain at the scene arises. A driver need only be "involved" in the accident. *See* Ind.Code § 9–26–1–1.

Alternatively, Barber contends that we should reverse his conviction for failure to stop after an accident resulting in death "because his actions substantially complied with the intent of the statute." *Id.* He notes that he pulled off of I–465 at the first possible exit and maintains that the only reason he did not get back on I–465 was that "traffic was already backed up." *Id.* He also called the police as soon as he arrived at his home. However, the evidence tending to prove that he did not comply with the statute is substantial.

One witness testified that after Thompson lost control of her car, Barber initially slowed down and observed the accident, but then, instead of pulling over onto the shoulder, Barber sped up and continued down the interstate. Multiple witnesses testified that there was ample room on the side of the road for Barber to pull his vehicle over and park. Indeed, a semi driver who witnessed the accident pulled his truck onto the shoulder and ran across the highway to Thompson's car. Then, when one of the witnesses confronted Barber, Barber stated that he "had nothing to do with [the collision]." Tr. p. 75. When the witness told Barber that Thompson and Gregg were killed, Barber responded, "No, they weren't[.]" *Id.* at 181. Finally, even though Barber said that he would return to the scene, he passed the on-ramp to I–465 and continued home. This evidence is sufficient to support the trial court's judgment. To the extent that Barber claims that he would have returned to the scene of the accident but for the traffic backing up, this is simply a request for us to reweigh the evidence, which we will not do.

## II. Sentencing

In addition to challenging his convictions, Barber also contends that the trial court improperly sentenced him.[4] In sentencing Barber, the trial court identified two aggravating circumstances, namely, Barber's criminal history and the fact that Barber was on probation at the time he committed the instant offenses. The trial court also found three mitigating circumstances: Barber's remorse, Barber's "health conditions," Tr. p. 262, and the fact that Barber had been suffering from depression. Finding that the aggravating circumstances outweigh the mitigating circumstances, the trial court imposed the maximum sentence of eight years for each conviction. The court ordered the sentences for the two reckless homicide convictions to run consecutively with the sentence for failure to stop to run concurrently. The trial court also suspended eight of the sixteen years and ordered four years of probation.

---

4. Because Barber committed his offenses before the 2005 amendments to the sentencing statutes, we operate under the former presumptive scheme. *See Walsman v. State,* 855 N.E.2d 645, 650–51 (Ind.Ct.App.2006), *reh'g* denied; *Weaver v. State,* 845 N.E.2d 1066 (Ind.Ct.App.2006), *trans. denied; but see Samaniego–Hernandez v. State,* 839 N.E.2d 798, 805 (Ind.Ct.App.2005).

Barber argues (1) that the trial court abused its discretion in imposing the sentence, (2) that his sentence is inappropriate in light of the nature of his offenses and his character, and (3) that the trial court violated Indiana Code § 35-50-2-1.3 in imposing his sentence.

### A. Abuse of Discretion

■■■ Barber argues that the trial court assigned too much aggravating weight to his criminal history. Sentencing is generally left to the discretion of the trial court, and we will only reverse a trial court's sentencing decision based on an abuse of that discretion. *Losch v. State,* 834 N.E.2d 1012, 1014 (Ind.2005). The aggravating weight to be accorded to a defendant's criminal history is measured by the number of prior convictions and their gravity, by their proximity or distance from the present offense, and by any similarity or dissimilarity to the present offense that might reflect on the defendant's culpability. *Duncan v. State,* 857 N.E.2d 955, 959 (Ind.2006). Barber's criminal history consists of a 1982 conviction for driving with a suspended license and 2003 convictions for battery and theft. Barber contends that his prior convictions "do not constitute a pattern of criminal behavior," that "[t]he State failed to show that Mr. Barber's prior convictions bore any relation to his present offense," and that his prior offenses were not "similar in gravity" to his current offenses. Amended Appellant's Br. p. 16–17.

Barber's argument is not completely without merit. In the first twenty years following his 1982 conviction for driving with a suspended license at the age of nineteen, Barber was arrested several times but never convicted of any crime. However, Barber's criminal activity has been more brisk in the last few years. He was convicted of both battery and theft less than a year before committing the instant offenses. His battery conviction, in particular, is related to the instant offense, as it required proof of "rude, insolent, or angry" behavior. *See* Ind.Code § 35-42-2-1. Reckless homicide is not always a crime of anger, but in this case it is. Though Barber's criminal history is not particularly lengthy or grave, it is at least in part recent and similar to the instant offenses.

■■■ We also note that in weighing Barber's criminal history, the trial court apparently relied in part on several arrests that did not lead to convictions. It stated that Barber had six previous "anger related offenses." Tr. p. 262. But a look at Barber's presentence investigation report reveals that while Barber had been arrested for six "anger related offenses," he was only convicted of one: battery.[5] "A record of arrest, without more, does not establish the historical fact that a defendant committed a criminal offense and may not be properly considered as evidence of criminal history." *Cotto v. State,* 829 N.E.2d 520, 526 (Ind.2005). "However, a record of arrest, particularly a lengthy one, may reveal that a defendant has not been deterred even after having been subject to the police authority of the State." *Id.* Barber was arrested nine times between 1981 and 2003. "Such information may be relevant to the trial court's assessment of the defendant's character in terms of the risk that he will commit another crime." *Id.*

■■■ Furthermore, Barber does not challenge—indeed, does not even mention—the other aggravating circumstance found by the trial court, i.e., the fact that Barber was on probation at the time of the

---

5. The other five "anger related offenses" for which Barber has been arrested are domestic battery, resisting law enforcement, and three times for disorderly conduct.

instant offenses. "Probation stands on its own as an aggravator. While a criminal history aggravates a subsequent crime because of recidivism, probation further aggravates a subsequent crime because the defendant was still serving a court-imposed sentence." *Ryle v. State,* 842 N.E.2d 320, 323 n. 5 (Ind.2005), *cert. denied,* —— U.S. ——, 127 S.Ct. 90, 166 L.Ed.2d 63 (2006). A single aggravating circumstance may be enough to justify both the enhancement of a sentence and the imposition of consecutive sentences. *Noojin v. State,* 730 N.E.2d 672, 678 (Ind. 2000). Even if we were to find that Barber's criminal history is an insignificant aggravator, the fact that he was on probation at the time of the instant offenses is a significant aggravator. The trial court did not abuse its discretion in imposing the maximum sentence of eight years for each of Barber's convictions or in ordering the sentences for Barber's reckless homicide convictions to run consecutively.[6]

### B. Inappropriateness

■ Barber also argues that his eight-year sentence to be followed by four years of probation is inappropriate in light of the nature of his offenses and his character. Indiana Rule of Appellate Procedure 7(B) states: "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." "Although appellate review of sentences must give due consideration to the trial court's sentence because of the special expertise of the trial bench in making sentencing decisions, Appellate Rule 7(B) is an authorization to revise sentences when certain broad conditions are satisfied." *Purvis v. State,* 829 N.E.2d 572, 587 (Ind.Ct. App.2005) (internal citations omitted), *trans. denied.* After due consideration of the trial court's decision, we cannot say that Barber's sentence is inappropriate.

Regarding the nature of Barber's offenses, we cannot say that the deaths of Thompson and Gregg justify the maximum sentences imposed by the trial court, as those deaths were elements of the crimes of which Barber was convicted. However, unlike many reckless homicide convictions, Barber's convictions are based on a course of conscious, purposeful, and angry conduct directed at his eventual victims. This is not to say that Barber intended harm to his victims any more than any other person convicted of reckless homicide, but his awareness of the risk created by his conduct was much more acute given that the collision was merely the culmination of a prolonged, dangerous dispute between Barber and Thompson. Barber's sentence is not inappropriate in light of the nature of his offenses.

As for Barber's character, we look again to Barber's prior convictions, his lengthy arrest record, and the fact that he was on probation at the time of the instant offenses. Even after being arrested nine times and convicted of three crimes in the years preceding the instant offenses, Barber was not deterred from criminal activity. Indeed, Barber was still on probation based on one of his previous convictions when he committed the instant offenses. Nothing about Barber's character leads us to find that his sentence in this cause is inappropriate.

---

6. We reiterate that that the trial court ordered Barber's sentence for failure to stop after an accident resulting in death to run concurrently with his consecutive sentences for reckless homicide and suspended eight years of the sixteen-year sentence, with four years to be served on probation.

## C. Indiana Code § 35–50–2–1.3

■ Finally, Barber asserts that the trial court erred in ordering the maximum eight-year sentences for the two Class C felony reckless homicide convictions to run consecutively. He argues that in doing so, the trial court violated Indiana Code § 35–50–2–1.3, which provides:

(a) For purposes of sections 3 through 7 of this chapter, "advisory sentence" means a guideline sentence that the court may voluntarily consider as the midpoint between the maximum sentence and the minimum sentence.

(b) Except as provided in subsection (c), a court is not required to use an advisory sentence.

(c) In imposing:

(1) consecutive sentences in accordance with IC 35–50–1–2;

(2) an additional fixed term to an habitual offender under section 8 of this chapter; or

(3) an additional fixed term to a repeat sexual offender under section 14 of this chapter;

a court is required to use the appropriate advisory sentence in imposing a consecutive sentence or an additional fixed term. However, the court is not required to use the advisory sentence in imposing the sentence for the underlying offense.

Barber contends that if the trial court wanted to impose consecutive sentences for the two reckless homicide convictions, it should not have exceeded the advisory sentence of four years for each of the individual sentences.

■ We first note that while Barber was sentenced in 2006, he committed his offenses on March 21, 2004, more than a year before Indiana Code § 35–50–2–1.3 came into effect on April 25, 2005. *See* P.L. 71–2005, § 5. Courts generally must sentence defendants under the sentencing statutes in effect at the time the defendant committed the offense. *Jacobs v. State,* 835 N.E.2d 485, 491 n. 7 (Ind.2005). However, an exception to the general rule exists. The doctrine of amelioration provides that "a defendant who is sentenced after the effective date of a statute providing for more lenient sentencing is entitled to be sentenced pursuant to that statute rather than the sentencing statute in effect at the time of the commission or conviction of the crime." *Richards v. State,* 681 N.E.2d 208, 213 (Ind.1997) (quoting *Lunsford v. State,* 640 N.E.2d 59, 60 (Ind.Ct. App.1994)). In order to determine whether Indiana Code § 35–50–2–1.3 applies to Barber's sentencing, we must first determine whether it is ameliorative.

Two panels of this Court have addressed this issue and reached different results. In *White v. State,* 849 N.E.2d 735 (Ind.Ct. App.2006), *reh'g denied, trans. denied,* the defendant was convicted of murder and attempted murder, and the trial court sentenced him to consecutive maximum terms of sixty-five years for murder and fifty years for attempted murder. On appeal, the defendant argued that under Indiana Code § 35–50–2–1.3, the trial court was required to use advisory sentences in imposing consecutive sentences. This Court held:

Indiana Code § 35–50–2–1.3 instructs: "In imposing consecutive sentences in accordance with IC 35–50–1–2[,] a court is required to use the appropriate advisory sentence in imposing a consecutive sentence[.]" We conclude that when the General Assembly wrote "appropriate advisory sentence," it was referring to the total penalty for "an episode of criminal conduct," which, except for crimes of violence, is not to exceed "the advisory sentence for a felony which is one (1) class of felony higher than the most

serious of the felonies for which the person has been convicted." *See* Ind. Code § 35–50–1–2(c). In other words, the advisory sentence for a felony which is one class of felony higher than the most serious of the felonies for which the person has been convicted is the "appropriate advisory sentence" for an episode of non-violent criminal conduct. Indiana Code § 35–50–1–2 in no other way limits the ability of a trial court to impose consecutive sentences. In turn, Indiana Code § 35–50–2–1.3, which references Indiana Code § 35–50–1–2, imposes no additional restrictions on the ability of trial courts to impose consecutive sentences, and therefore, is not ameliorative.

849 N.E.2d 735, 743 (Ind.Ct.App.2006). White, like Barber, committed his offenses before the effective date of Indiana Code § 35–50–2–1.3 but was sentenced after. Because we concluded that the statute is not ameliorative, it did not apply to White's sentencing.[7]

Recently, another panel of this Court expressly disagreed with *White* in *Robertson v. State,* 860 N.E.2d 621 (Ind.Ct.App. 2007), *trans. pending.* In *Robertson,* the defendant was convicted of Class D felony theft, and the trial court imposed a sentence of two years. The trial court ordered the sentence "to be served consecutive to Robertson's sentence in Hendricks County for possession of methamphetamine." *Id.* at 622. Robertson appealed, arguing that Indiana Code § 35–50–2–1.3 "requires the trial court to impose the advisory sentence for [his] consecutive sentence." *Id.* at 623–24. This Court stated:

> Our concern with the analysis in *White* is that (1) it renders the language in IC 35–50–2–1.3 surplusage since the consecutive sentencing statute, IC 35–50–1–2, clearly limits the total of the consecutive sentences for non-violent offenses to the advisory sentence for the next highest class of felony; and (2) nothing in the advisory sentencing statute, IC 35–50–2–1.3, limits its application to non-violent offenses. Although the *White* decision argues that the legislature could not have intended the results the statute is capable of generating, the argument is moot " '[w]hen the language of the statute is clear and unambiguous.' " *White,* 849 N.E.2d at 742–43 (quoting *Woodward v. State,* 798 N.E.2d 260, 262 (Ind. Ct.App.2003)), *trans. denied.* We hold that the advisory sentencing statute, IC 35–50–2–1.3, is clear and unambiguous and imposes a separate and distinct limitation on a trial court's ability to deviate from the advisory sentence for any sentence running consecutively. We further hold that the ameliorative nature of the statute must be extended to those individuals who committed an offense before the statute was in effect and were sentenced thereafter. *See Richards v. State,* 681 N.E.2d 208, 213 (Ind.1997).

*Id.* at 624–25. The Court remanded the case to the trial court with instructions to impose the advisory sentence of one-and-a-half years for Robertson's Class D felony theft conviction. *Id.* at 625. The State has petitioned for transfer in *Robertson.*

We will adhere to the *White* panel's interpretation of Indiana Code § 35–50–2–1.3.[8] We write here to add two observations that support that interpretation.

First, we do not agree with the *Robertson* panel that the *White* panel's interpretation of Indiana Code § 35–50–2–1.3

---

**7.** Obviously, because we held that the statute is not ameliorative, our analysis would not have changed even if it did "apply" to White's sentencing.

**8.** This author wrote *White.*

renders the language of that statute "surplusage." *Id.* at 624. The *White* panel *did* hold that Indiana Code § 35–50–2–1.3 "imposes no additional restrictions on the ability of trial courts to impose consecutive sentences" beyond those restrictions imposed by Indiana Code § 35–50–1–2. 849 N.E.2d at 743. However, Indiana Code § 35–50–2–1.3 serves another very important purpose.

In the wake of *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and *Smylie v. State*, 823 N.E.2d 679 (Ind.2005), *cert. denied,* — U.S. ——, 126 S.Ct. 545, 163 L.Ed.2d 459 (2005), our legislature transformed Indiana's sentencing scheme from a presumptive scheme to an advisory scheme. *See McMahon v. State*, 856 N.E.2d 743, 747 (Ind.Ct.App.2006). Under the former presumptive scheme, a trial court was required to impose the "presumptive" sentence for a felony conviction unless the court found aggravating circumstances to enhance the sentence or mitigating circumstances to reduce the sentence. *See id.* at 746. Under the new advisory scheme, trial courts are generally *not* required to use an advisory sentence. *See* I.C. § 35–50–2–1.3 ("Except as provided in subsection (c), a court is not required to use an advisory sentence."). Because an advisory sentence is in most cases exactly that—advisory— the legislature included subsection (c) of Indiana Code § 35–50–2–1.3 to remind Indiana's trial courts of those statutory provisions that *do* require the "use" of an advisory sentence: (1) in imposing consecutive sentences in accordance with Indiana Code § 35–50–1–2; (2) in imposing an additional fixed term to an habitual offender under Indiana Code § 35–50–2–8; and (3) in imposing an additional fixed term to a repeat sexual offender under Indiana Code § 35–50–2–14.

We acknowledge that nothing in Indiana Code § 35–50–2–1.3(c) limits its application to any specific subsections of Indiana Code §§ 35–50–1–2, 35–50–2–8, and 35–50–2–14, but each of those statutes only includes one subsection that refers to advisory sentences. Indiana Code § 35–50–2–8(h) provides:

> The court shall sentence a person found to be a habitual offender to an additional fixed term that is not less than the advisory sentence for the underlying offense nor more than three (3) times the advisory sentence for the underlying offense. However, the additional sentence may not exceed thirty (30) years.

Indiana Code § 35–50–2–14(e) provides: "The court may sentence a person found to be a repeat sexual offender to an additional fixed term that is the advisory sentence for the underlying offense. However, the additional sentence may not exceed ten (10) years." Likewise, Indiana Code § 35–50–1–2(c) provides, in pertinent part:

> [E]xcept for crimes of violence, the total of the consecutive terms of imprisonment to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the advisory sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted.

We cannot ignore the message the legislature sent when it wrote Indiana Code § 35–50–2–1.3: trial courts are required to use advisory sentences only in those situations where another statute specifically requires it. Only Indiana Code §§ 35–50–1–2(c), 35–50–2–8(h), and 35–50–2–14(e) require the use of advisory sentences.

We make another observation regarding the *Robertson* panel's interpretation of Indiana Code § 35–50–2–1.3. The Court stated that "the trial court was not re-

stricted from deviating from the advisory on the underlying offense, namely, [Robertson's] prior conviction in Hendricks County for possession of methamphetamine. *See* IC 35–50–2–1.3(c)(1)." 860 N.E.2d at 625. This proposition is based on the last sentence of Indiana Code § 35–50–2–1.3(c), which provides, "[T]he court is not required to use the advisory sentence in imposing the sentence for the underlying offense." The *White* panel had a different view of the meaning of that language:

> The last sentence of Indiana Code § 35–50–2–1.3(c), i.e., "the court is not required to use the advisory sentence in imposing the sentence for the underlying offense," is confusing. "Underlying offense" is a legal term of art that only applies to repeat offender sentencing enhancements, such as subsections (c)(2) and (c)(3), which deal with habitual offenders and repeat sexual offenders, respectively. When dealing strictly with consecutive sentences for distinct criminal violations, as under subsection (c)(1), there is no "underlying offense." Therefore, the last sentence of the statute can only apply to subsections (c)(2) and (c)(3).

849 N.E.2d at 741 n. 5. Applying the *Robertson* Court's interpretation of the term "underlying offense" presents a difficult conceptual problem when applied to Barber's case. Which of Barber's two reckless homicide convictions is the "underlying offense"? The problem becomes more evident when applied to the facts of *White*. White was convicted of murder and attempted murder in the same cause. Under *Robertson*, how would the trial court have decided which offense was the "underlying offense"? Because we follow *White*, we need not worry about this question.

The trial court did not err in imposing consecutive maximum sentences for Barber's two reckless homicide convictions.

### Conclusion

The evidence is sufficient to support Barber's convictions for reckless homicide and failure to stop after an accident resulting in death. Furthermore, the trial court did not abuse its discretion in sentencing Barber, and Barber's sentence is not inappropriate in light of the nature of his offenses and his character. Finally, the trial court did not err in imposing consecutive maximum sentences for Barber's two reckless homicide convictions. Therefore, we affirm the judgment of the trial court.

Affirmed.

BARNES, J., and CRONE, J., concur.