## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**ATTORNEY FOR APPELLANT**

Christopher Kunz
Marion County Public Defender
Indianapolis, Indiana

**ATTORNEYS FOR APPELLEE**

Curtis T. Hill, Jr.
Attorney General of Indiana

Megan M. Smith
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Raymond Lee Montgomery,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff*

December 11, 2020

Court of Appeals Case No.
20A-CR-183

Appeal from the Marion Superior
Court

The Honorable Shatrese Flowers,
Judge

The Honorable James Snyder,
Commissioner

Trial Court Cause No.
49G02-1902-F3-5674

**May, Judge.**

[1] Raymond Lee Montgomery appeals his sentence for Level 3 felony robbery resulting in bodily injury[1] and Class A misdemeanor interfering with the reporting of a crime.[2] Montgomery contends his twelve-year sentence is inappropriate given the nature of his offenses and his character. We affirm.

## Facts and Procedural History

[2] In the early morning of February 11, 2019, Patrick Connors exited his Indianapolis apartment to go to work. As he was walking down the stairs inside the apartment building, Connors noticed a man he did not recognize, later identified as Montgomery, standing at the bottom of the stairwell. Connors grew concerned because he did not believe Montgomery was a resident of the apartment building. Upon approaching Montgomery, Connors informed him that "[he couldn't] be in here," (Tr. Vol. II at 68), and Montgomery replied that he was waiting for his ride to arrive. At the bottom of the stairwell Connors repeated his statement that Montgomery could not be in the building, and Montgomery began "talking really crazily." (*Id*. at 69.)

[3] When Connors took out his cellphone to call the police, Montgomery lunged toward the cellphone in Connors' hand and pulled on Connors' shirt. Connors lost his balance, fell, and hit his head on the corner of the wall, which resulted

---

[1] Ind. Code § 35-42-5-1(a)(1).

[2] Ind. Code § 35-45-2-5(1).

in a laceration and profuse bleeding. As Connors lay on the ground, a struggle ensued for his cellphone. Connors kicked at Montgomery to ward him off, but Montgomery hit Connors, grabbed the cellphone, and also took a pack of cigarettes that had fallen out of Connors' pocket.

[4] Montgomery left the building through the back door, and Connors used a neighbor's phone to contact the police. Relying on Connors' description of Montgomery, police located Montgomery within thirty minutes. The police did not find the cellphone when they searched Montgomery, but they did find a pack of cigarettes that matched the brand Connors regularly smoked. The Marion County Crime Lab analyzed a smear of blood found on the pack of cigarettes and determined the blood matched Connors' DNA.

[5] On February 13, 2019, the State charged Montgomery with Level 3 felony robbery resulting in bodily injury, Class A misdemeanor battery resulting in bodily injury,[3] and Class A misdemeanor interfering with the reporting of a crime. During trial on October 30, 2019, a jury found Montgomery guilty of all counts, but the trial court vacated Montgomery's battery conviction due to double jeopardy concerns. On December 18, 2019, the trial court sentenced Montgomery to a term of twelve years for the Level 3 felony conviction, with nine years of that sentence to be executed in the Department of Correction. The court suspended the remaining three years and ordered Montgomery to

---

[3] Ind. Code § 35-42-2-1(c)(1).

serve two of the three suspended years on probation. The trial court also imposed a 365-day sentence for the Class A misdemeanor and ordered the sentence to be served concurrent with Montgomery's sentence for robbery resulting in bodily injury.

# Discussion and Decision

[6] We will reverse Montgomery's sentence as inappropriate only if we determine his sentence is inappropriate in light of both the nature of his offenses and his character. *See* Ind. Appellate Rule 7(B) ("the Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender"). The nature of the offense analysis compares the defendant's actions with the required showing to sustain a conviction under the charged offense, *Cardwell v. State,* 895 N.E.2d 1219, 1224 (Ind. 2008), while the character of the offender analysis permits broader consideration of a defendant's character. *Douglas v. State,* 878 N.E.2d 873, 881 (Ind. Ct. App. 2007).

[7] Ultimately, our determination of appropriateness "turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell,* 895 N.E.2d at 1224. In maintaining the special deference given to the trial court, we recognize that the task at hand is not to evaluate whether another sentence within the prescribed sentencing range is more appropriate, but rather

whether the sentence imposed by the trial court is inappropriate. *Barker v. State,* 994 N.E.2d 306, 315 (Ind. Ct. App. 2013), *trans. denied.* The defendant ultimately bears the burden of demonstrating the inappropriateness of the sentence. *Patterson v. State,* 909 N.E.2d 1058, 1063 (Ind. Ct. App. 2009).

[8] When considering the nature of the offense, the advisory sentence is the starting point for determining the appropriateness of a given sentence. *Anglemyer v. State,* 868 N.E.2d 482, 494 (Ind. 2007), *clarified on reh'g* 878 N.E.2d 218 (Ind. 2007). The advisory sentence for a Level 3 felony is nine years, with a sentencing range between three and sixteen years. Ind. Code § 35-50-2-5. For Montgomery's Level 3 felony robbery resulting in bodily injury the trial court imposed a twelve-year sentence, which is within the sentencing range for his offense but above the advisory sentence. In addition, Montgomery was convicted of Class A misdemeanor interfering with the reporting of a crime and sentenced to 365-days; the maximum sentence for a Class A misdemeanor is one year. Ind. Code § 35-50-3-2.

[9] Montgomery argues that he was not doing anything wrong by being inside the apartment building when he was confronted by Connors and that he did not plan to commit the robbery or cause injury to Connors. We are not persuaded by Montgomery's attempts at self-exculpation or his lack of accountability. Connors had been a resident of his apartment building for twenty-five years, and thus he likely would have taken notice of any unauthorized persons idling in the stairwell in the early morning. Connors provided two opportunities for Montgomery to leave the building or explain his business or associations in the

apartment building. Montgomery responded by attacking Connors when he attempted to contact the police. Although Montgomery claims that he was "not doing anything illegal" by being present inside the apartment building, (Appellant's Br. at 12), he prevented Connors from calling the police when confronted and questioned.

[10] Moreover, rather than leaving immediately when Conners fell, Montgomery continued to struggle with Connors, who was bleeding profusely from his head injury, and ultimately took Conners' cellphone and cigarettes. Montgomery claims he "panicked and spontaneously robbed Connors." (*Id*. at 10.) While Montgomery may have panicked, we find implausible his assertion that panic leads to, or could excuse, his robbery of Conners. Although Montgomery argues that his "robbery was not planned," (*id*. at 12), and the State also acknowledged that Montgomery may not have intended or planned to rob Connors at the outset of the altercation, (Tr. Vol. II. at 132), we cannot overlook that Montgomery did not simply walk out of the building after injuring Connors; instead, Montgomery took the time to grab the cellphone and a pack of cigarettes that fell out of Connors' pocket, despite allegedly being in a state of panic.

[11] When considering the character of the offender, one relevant fact is the defendant's criminal history. *Rutherford v. State*, 866 N.E.2d 867, 874 (Ind. Ct. App. 2007). Although the extent to which a defendant's criminal history may be used to guide an appropriate sentence "varies based on the gravity, nature, and number of prior offenses in relation to the current offense," *Wooley v. State*,

716 N.E.2d 919, 929 (Ind. 1999), repeated contacts with the criminal justice system generally reflect poorly on the defendant's character, because such contacts suggest the defendant "has not been deterred [from further criminal behavior] even after having been subjected to the police authority of the State." *Cotto v. State*, 829 N.E.2d 520, 526 (Ind. 2005).

[12] Montgomery's criminal history includes one felony conviction and ten misdemeanor convictions, in addition to his adjudication as a delinquent child twice for possession of marijuana and resisting law enforcement beginning at fifteen years old. His convictions range from Level 6 felony battery resulting in moderate bodily injury[4] to Class B misdemeanor disorderly conduct.[5] Also reflecting negatively on Montgomery's character is that, when he committed the present offense, Montgomery had a probation revocation pending in Indiana for "groping a woman's breast" in the Indianapolis Circle Center Mall, (Tr. Vol. II at 157), and an active warrant in Minnesota. *See Barber v. State*, 863 N.E.2d 1199, 1208 (Ind. Ct. App. 2007) (the commission of an offense while on probation is a "significant aggravator"), *trans. denied*. While the trial court noted Montgomery's struggles with mental illness, addiction, and homelessness, it also recognized Montgomery's failed prior attempts at rehabilitation, specifically that he has had his probation revoked on two other occasions, which indicates a continued disregard for the law despite having

---

[4] Ind. Code § 35-42-2-1(c)(1).

[5] Ind. Code § 35-45-1-3(a)(1).

been provided leniency by a trial court. *See Littrell v. State*, 15 N.E.3d 646, 652-653 (Ind. Ct. App. 2014) (defendant's inability to complete drug treatment programs and the presence of petitions to revoke defendant's probation confirm appropriateness of sentence).

[13]   Neither Montgomery's assertions about the nature of his offenses nor his character, in light of his criminal history and failure to take advantage of prior opportunities to modify his behavior, convince us that Montgomery's twelve-year sentence, with three years suspended, is inappropriate for his crimes. *See Sainvil v. State*, 51 N.E.3d 337, 344 (Ind. Ct. App. 2016) (defendant's sentence for cocaine possession found to be appropriate where defendant had been granted leniency in sentencing on previous occasions, without modification of behavior).

# Conclusion

[14]   Montgomery's claim of a "spontaneous" and "unplanned" robbery is counter to the facts presented and unpersuasive as an excuse. Montgomery's sentence is not inappropriate given his previous criminal history of related offenses demonstrating a lack of deterrence from crime, particularly given his failure to successfully complete probation on multiple occasions. Accordingly, we affirm.

[15]   Affirmed.

Riley, J., and Altice, J., concur.