# FOR PUBLICATION



**FILED**
Sep 11 2014, 8:57 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**LEANNA WEISSMAN**
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| BRIAN M. MARLEY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 15A01-1403-CR-127 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE DEARBORN SUPERIOR COURT 1
The Honorable Jonathan N. Cleary, Judge
Cause No. 15D01-1305-FB-20

**September 11, 2014**

**OPINION – FOR PUBLICATION**

**MATHIAS, Judge**

Brian M. Marley ("Marley") pleaded guilty in Dearborn Superior Court to Class B felony dealing in oxycodone, a Schedule II controlled substance, and was sentenced to a term of twelve years, with ten years executed and two suspended to probation. On appeal, Marley claims that his sentence is inappropriate in light of the nature of the offense and the character of the offender.

We affirm.

**Facts and Procedural History**

At the time relevant to this appeal, Marley lived with a woman named Kaitlin Palmer ("Palmer"). Both Palmer and Marley were addicted to heroin. Marley also had a prescription for oxycodone, an opiate pain-killer and a Schedule II controlled substance. See Ind. Code § 35-48-2-6(b)(1)(O); see also Toney v. State, 961 N.E.2d 57, 60 (Ind. Ct. App. 2012) (noting that oxycodone is an opiate). On February 13, 2013, an undercover police officer in Dearborn County met Palmer through a friend of hers and told her that he was looking to buy drugs for his cousin. Knowing that Marley was willing to sell his oxycodone pills to help fund his heroin addiction, Palmer contacted Marley and told him of the opportunity to sell the pills. Marley met Palmer and sold the undercover officer ten oxycodone pills for $100. Marley and Palmer then took the proceeds from the sale and purchased heroin, which they shared.

Thereafter, Palmer called the undercover officer repeatedly to ask if he wanted to purchase more pills. Eventually, Palmer arranged two more sales. The first occurred on March 12, 2013. On that date, Marley drove Palmer to a nearby Walmart parking lot and met with the undercover officer. Palmer then sold the officer five oxycodone pills for

2

$50. A similar exchange took place on April 16, 2013, when Marley again drove Palmer to the Walmart parking lot, and she sold eight pills to the undercover officer in exchange for $80.

As a result of these events, the State charged Marley on May 10, 2013 with one count of Class B felony dealing in oxycodone, a Schedule II controlled substance. Palmer was similarly charged and came to a plea agreement with the State whereby she would plead guilty and testify against Marley in exchange for receiving a sentence of fifteen years, with five years to be served in the "Purposeful Incarceration"[1] program and ten years suspended to probation.

Marley, however, was unable to reach a plea agreement with the State, and on February 20, 2014, entered into an open plea of guilty. The trial court accepted the plea and conducted a sentencing hearing. The court found Marley's criminal history to be an aggravating circumstance, noting that the State could have charged Marley as an habitual offender. The court found as mitigating Marley's poor physical health and that he seemed willing to participate in therapy to overcome his addiction. The court noted that Marley had a wife and three children, but gave this little mitigating weight because there was no evidence that Marley supported his children. The court also noted Marley's

---

[1] According to the Indiana Department of Correction's website:

> In 2009 the Indiana Department of Correction (IDOC) began a cooperative project with Indiana Court Systems called Purposeful Incarceration (P.I.). The Department works in collaboration with Judges who can sentence chemically addicted offenders and document that they will "consider a sentence modification" should the offender successfully complete an IDOC Therapeutic community. This supports the Department [of] Correction and the Judiciary to get addicted offenders the treatment that they need and work collaboratively to support their successful re-entry into society.

Purposeful Incarceration, http://www.in.gov/idoc/2798.htm (last visited Aug. 29, 2014).

guilty plea as mitigating. The trial court then sentenced Marley to twelve years, with ten years executed and two years suspended to probation. Marley now appeals.

## Standard of Review

Even if a trial court acted within its statutory discretion in imposing a sentence, Article 7, Sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of a sentence imposed by the trial court.[2] Trainor v. State, 950 N.E.2d 352, 355-56 (Ind. Ct. App. 2011), trans. denied (citing Anglemyer v. State, 868 N.E.2d 482, 491 (Ind. 2007)). This authority is implemented via Indiana Appellate Rule 7(B), which provides that the court on appeal "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Id.

Still, we must and should exercise deference to a trial court's sentencing decision, because Rule 7(B) requires us to give due consideration to that decision and because we understand and recognize the unique perspective a trial court brings to its sentencing decisions. Id. Although we have the power to review and revise sentences, the principal role of our review should be to attempt to level the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve what we perceive to be a "correct" result in each case. Fernbach v.

---

[2] Marley does not claim that the trial court abused its discretion in sentencing him. He claims only that his sentence is inappropriate.

State, 954 N.E.2d 1080, 1089 (Ind. Ct. App. 2011), trans. denied (citing Cardwell v. State, 895 N.E.2d 1219, 1225 (Ind. 2008)).

When reviewing the appropriateness of a sentence, we are not "to consider only the appropriateness of the aggregate length of the sentence without considering also whether a portion of the sentence is ordered suspended." Davidson v. State, 926 N.E.2d 1023, 1024. (Ind. 2010). But "[t]his does not preclude a reviewing court from determining a sentence to be inappropriate due to its overall sentence length despite the suspension of a substantial portion thereof. A defendant on probation is subject to the revocation of probation and may be required to serve up to the full original sentence." Id.

The appropriate question is not whether another sentence is more appropriate; instead, the question is whether the sentence imposed is inappropriate. Former v. State, 876 N.E.2d 340, 344 (Ind. Ct. App. 2007). Although we need not compare the sentences of codefendants we are not precluded from comparing sentences among those convicted of the same or similar crimes. Knight v. State, 930 N.E.2d 20, 22 (Ind. 2010). It is the defendant's burden on appeal to persuade us that the sentence imposed by the trial court is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

**Discussion and Decision**

Marley entered an open plea to a Class B felony. The sentencing range for a Class B felony is six to twenty years, with ten years being the advisory sentence. Here, the trial court imposed a sentence of two years greater than the advisory, but also eight years less

than the maximum. It also ordered two years suspended to probation. Thus, Marley received an executed sentence equivalent to the advisory sentence, i.e. ten years.[3]

A. *Revisions to the Criminal Code*

Marley claims that his sentence is inappropriate in light of the recent changes to the Indiana criminal code that have, under certain circumstances, notably decreased the sentences for drug offenses. Marley does not claim that the new criminal code statutes apply directly to his conviction and sentence; he claims instead that we should consider the public policy set forth in the new criminal code in determining whether his sentence is inappropriate.

Under the version of the dealing statue in effect prior to July 1, 2014, which Marley admits is applicable to his offense, dealing in a Schedule I, II, or III controlled substance was a Class B felony, with a sentencing range of six to twenty years. Ind. Code § 35-48-4-2(a) (2013).[4] Under the new version of the dealing statute, which became effective July 1, 2014, dealing in a Schedule I, II, or III controlled substance is a Level 6 felony, with a sentencing range of six months to one and one-half years. Ind. Code § 35-48-4-2(a) (2014). Proof of dealing in larger amounts[5] can elevate this crime

---

[3] We also note that the trial court was required to impose an executed sentence of at least six years, the minimum sentence for a Class B felony, due to Marley's prior felony convictions. See Ind. Code § 35-50-2-2(b)(1) (providing that a trial court "may suspend only that part of the sentence that is in excess of the minimum sentence . . . [if] [t]he crime committed was a Class A felony or Class B felony and the person has a prior unrelated felony conviction.").

[4] If certain additional elements were proven, this crime could be elevated to a Class A felony, with a sentencing range of twenty to fifty years. I.C. § 35-48-4-2(b) (2013).

[5] With regard to elevation based on the amount of the controlled substance, dealing is: a Level 5 felony if the amount is at least one gram but less than five grams; a Level 4 felony if the amount is at least five grams but less than ten grams; a Level 3 felony if the amount is at least five grams but less than ten grams; and a Level 2 felony if the amount is at least twenty-eight grams. Ind. Code § 35-48-4-2(c) – (f)

6

up to a Level 2 felony. Ind. Code § 35-48-4-2(b) (2014). The sentencing range for a Level 2 felony is ten to thirty years. Ind. Code § 35-50-2-4.5 (2014). Marley argues that we should consider this reduction in the penalties for dealing in a controlled substance when addressing whether his sentence is appropriate.

Generally speaking, the sentencing statutes in effect at the time the defendant committed the offense govern the defendant's sentence. Barber v. State, 863 N.E.2d 1199, 1209 (Ind. Ct. App. 2007). However, the doctrine of amelioration provides an exception to this general rule where a defendant who is sentenced after the effective date of a statute providing for more lenient sentencing is entitled to be sentenced pursuant to that statute rather than the sentencing statute in effect at the time of the commission or conviction of the crime. Id. Notably, the doctrine of amelioration does not apply where the legislature, in a specific saving clause, expressly states an intention that crimes committed before the effective date of the ameliorative amendment should be prosecuted under prior law. Turner v. State, 870 N.E.2d 1083, 1087 (Ind. Ct. App. 2007).

Here, the General Assembly, in enacting the new criminal code, also enacted savings clauses. Specifically, both Indiana Code section 1-1-5.5-21 and section 1-1-5.5-22 state that the new criminal code "does not affect: (1) penalties incurred; (2) crimes committed; or (3) proceedings begun" before the effective date of the new criminal code sections, i.e., July 1, 2014. These sections also provide that "Those penalties, crimes, and proceedings continue and shall be imposed and enforced under prior law as if [the new

---

(2014). Dealing in a controlled substance can also be elevated based on the presence of certain "enhancing circumstances." These enhancing circumstances are listed in Indiana Code section 35-48-1-16.5 (2014).

criminal code] had not been enacted." Id. And, in no uncertain terms, these sections state: "The general assembly does not intend the doctrine of amelioration (see Vicory v. State, 400 N.E.2d 1380 (Ind. 1980)) to apply to any SECTION [of the new criminal code]." Id.

It is abundantly clear from these statutes that the General Assembly intended the new criminal code to have no effect on criminal proceedings for offenses committed prior to the enactment of the new code. We think this is true with regard to considering the appropriateness of a sentence under Appellate Rule 7(B); we are to proceed as if the new criminal code had not been enacted. We therefore decline to take into consideration the lesser penalties of the new criminal code in addressing the appropriateness of Marley's sentence. Instead, we consider what Appellate Rule 7(B) requires us to consider: the nature of the offense and the character of the offender.

B. *Nature of the Offense*

Marley argues that the nature of his offense was not particularly egregious. He focuses his argument on the fact that Palmer, who he claims was the more culpable of the two given her more active role in selling the pills to the undercover officer, was given an executed sentence of only five years. We do not find Marley's argument to be persuasive at all.

Even though Marley was charged with one count of dealing in a Schedule II controlled substance, there was evidence that he actively participated in three different sales. And Marley admitted that he made daily trips to Cincinnati to purchase heroin.

8

Although Palmer set up the drug sales, there was no indication that Marley was anything other than a willing participant in the sales so that he could fund his heroin habit.

With regard to Marley's claim that Palmer received a more lenient sentence, we disagree. It appears that Palmer entered into a plea agreement with a specific sentence, whereas Marley entered into an open plea with no sentencing limitations or recommendations. And even though Palmer was sentenced to only five years executed, she also received a total sentence of fifteen years versus Marley's twelve years.[6] Thus, after she is released from her executed time, Palmer will be on probation and be subject to serving an additional ten years if she violates the terms of her probation. See Davidson, 926 N.E.2d at 1024 ("A defendant on probation is subject to the revocation of probation and may be required to serve up to the full original sentence."). Therefore, the fact that Palmer received a different sentence than Marley received does support Marley's claim that his sentence is inappropriate.

C. *Character of the Offender.*

Marley's character also supports the trial court's sentencing decision. Marley's criminal history consists of two prior felony convictions and nine misdemeanor convictions. Appellant's App. p. 102. His prior convictions include: domestic violence, assault, operating while suspended, driving under the influence, disorderly conduct, resisting arrest, and driving with no license. Id. at 101-02.

Marley attempts to minimize his criminal history by claiming that, like his instant offense, his past crimes were all caused by his addiction, and he further notes that he has

---

[6] There is also no indication in the record that Palmer has a criminal history comparable to Marley's.

9

sought treatment for his addiction. While we certainly commend Marley for seeking treatment, the fact that he has a substance abuse problem is not necessarily a factor that weighs in favor of a lesser sentence. This is especially so since Marley never sought treatment until after his arrest for the instant offense. See Hape v. State, 903 N.E.2d 977, 1002 (Ind. Ct. App. 2009) (noting that a history of substance abuse may be a mitigating circumstance but may also be an aggravating circumstance where the defendant is aware of a substance abuse problem but has not taken appropriate steps to treat it); Bryant v. State, 802 N.E.2d 486, 501 (Ind. Ct. App. 2004) (holding that trial court did not err in finding substance abuse as an aggravating factor where defendant was aware of his problem with drugs and alcohol yet did not take any positive steps to treat his addiction); Bennet v. State, 787 N.E.2d 938, 948 (Ind. Ct. App. 2003) (holding that trial court did not err in failing to find defendant's alcohol abuse problem as mitigating, and could properly have considered such as aggravating, where defendant was aware of problem yet never sought help).

**Conclusion**

Because of the clear, unambiguous language of the savings clause statutes, we decline to take into consideration the lesser penalties of the new criminal code when addressing the appropriateness of Marley's sentence. Upon considering the nature of the offense and the character of the offender, we are unable to say that Marley's sentence of ten years executed and two years suspended is inappropriate.

Affirmed.

RILEY, J., and CRONE, J., concur.

10