## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 30 2015, 7:43 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Kevin Wild
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Antwion Carter,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

November 30, 2015

Court of Appeals Case No.
49A04-1503-CR-106

Appeal from the Marion Superior Court

The Honorable Kurt M. Eisgruber, Judge

Trial Court Cause No.
49G01-1307-FA-46672

**Pyle, Judge.**

# Statement of the Case

Antwion Carter ("Carter") appeals, following a joint jury trial with two co-defendants,[1] his convictions for Class A felony robbery,[2] Class B felony robbery,[3] Class B felony aggravated battery,[4] and two counts of Class D felony criminal confinement.[5] On appeal, Carter contends that the trial court erred in its assignment of aggravating and mitigating circumstances during sentencing. Concluding that the trial court did not abuse its discretion when sentencing Carter, we affirm his convictions. However, because the sentencing documents contained in the record indicate that some of the judgments of conviction were incorrectly entered, we remand this case to the trial court with instructions to correct these sentencing documents.

We affirm and remand with instructions to clarify the sentencing documents.

# Issue

Whether the trial court abused its discretion when sentencing Carter.

---

[1] Today, we also issue opinions in the appeals of Carter's co-defendants. *See Riley v. State*, 49A02-1503-CR-151; *Belk v. State*, 49A05-1503-CR-105.

[2] IND. CODE § 35-42-5-1. We note that, effective July 1, 2014, a new version of this robbery statute was enacted and that Class A felony robbery is now a Level 2 felony. Because Carter committed this crime in 2013, we will refer to the statute in effect at that time.

[3] I.C. § 35-42-5-1. Pursuant to the 2014 version of the robbery statute, this Class B felony robbery offense is now a Level 3 felony.

[4] I.C. § 35-42-2-1.5. Pursuant to the 2014 version of the aggravated battery statute, this Class B felony offense is now a Level 3 felony.

[5] I.C. § 35-42-3-3. Pursuant to the 2014 version of the criminal confinement statute, these Class D felony offenses are now Level 6 felonies.

# Facts

On July 10, 2013, around 5:00 p.m., Sylvester Kenney ("Kenney")[6] and Michael Spann ("Spann") were at Spann's house on North Chester Avenue in Indianapolis. Spann did not live in this house but used it to sell marijuana. After hearing a knock on the door, Kenney opened it, and Carter entered the house. Carter, who was armed with a gun with a laser, pointed it at Kenney and told him to get on the floor. Carter hit Spann on the head with the gun and told him to also get on the floor. Carter then took money from Kenney and Spann. When Spann's phone rang, Carter grabbed the earpiece from Spann and threatened to shoot him in the face if he told someone to come to the house.

Thereafter, Carter went by the window, made a phone call, and said, "I got these b****es -- y'all better hurry up." (Tr. 152). Allen Riley ("Riley") and Troy Belk ("Belk"), who were both armed with guns, entered the house. Belk kicked Kenney in the face, demanded money from him, and told Kenney that they had his mother and would kill her if he did not reveal the location of the money. Kenney, who recognized Belk, asked him, "Troy, why you doin['] this -- Troy --you know I ain't got no money[.]" (Tr. 165). Belk then grabbed a baseball bat that was in Spann's house and hit Kenney with it several times. During this time, Carter continued to keep his gun pointed at Kenney. Riley

---

[6] Kenney's nickname was "Tussy." (Tr. 71).

unplugged the surveillance cameras and stood over Spann with his gun pointed at him. When Spann looked up at Riley, he told Spann that he would shoot Spann in the face if Spann looked at him again.

[5] Thereafter, Carter and Belk dragged Kenney into the kitchen, continued to beat him, and asked him where the "stuff" was. (Tr. 264). Riley then grabbed Spann by the shirt, dragged him to the kitchen, and continued to hold his gun on him. Belk "ra[n]sack[ed]" the kitchen and rummaged through closets while Riley kept his gun pointed at Spann. (Tr. 158). Riley said that he had an "itchy trigger finger" and cocked his gun. (Tr. 158). At that same time, the doorbell rang. Belk and Riley ran to the door while Carter, still armed and pointing his gun at Kenney, stayed in the kitchen with Kenney and Spann. Belk said, "open the door and let him in -- we gonna kill him with these two." (Tr. 159).

[6] At that point, Kenney jumped on Carter and told Spann to run. Kenney punched Carter, who then shot Kenney in the face. Spann ran down the hall, saw Kenney fall to the ground, and saw a "flame" or a bullet coming toward him. (Tr. 161). Spann then dove out the window and ran down the alley, yelling repeatedly, "They tryin['] to kill us." (Tr. 163). Subsequently, when Spann went back to the house to check on Kenney, he saw Kenney on the front porch with blood "pouring out of his face[.]" (Tr. 163).

[7] Later, when officers from the Indianapolis Metropolitan Police Department ("IMPD") arrived on the scene, Spann gave them the name "Troy" as a suspect. (Tr. 84, 163, 165). Spann and Kenney were both taken to the hospital,

and Kenney was placed into a medically-induced coma. In the days following the crimes, IMPD officers investigated the crimes and subsequently showed photographic arrays to Kenney and Spann, who identified Carter, Belk, and Riley as the perpetrators of the crimes.

[8]     On July 18, 2013, the State charged Carter and Belk in a joint charging information, which contained the following counts: Count I, Class B felony aggravated battery (of Kenney); Count II, Class C felony battery (of Spann); Count III, Class A felony robbery (of Spann); Count IV, Class B felony criminal confinement (of Kenney); Count V, Class B felony criminal confinement (of Spann); Count VI, Class D felony criminal confinement (of Lacie Willis), and Count VII, Class D felony intimidation (of Willis).[7] Then, on September 16, 2013, the State amended the charging information by adding a Class A felony robbery (of Kenney) charge and by including Riley's name in the joint charges. Thus, the amended joint information contained ten counts, the following eight of which applied to Carter: Count I, Class B felony aggravated battery (of Kenney); Count II, Class C felony battery (of Spann); Count III, Class A felony robbery (of Spann); Count IV, Class B felony criminal confinement (of Kenney); Count V, Class B felony criminal confinement (of Spann); Count VI,

_____

[7] Count VI and Count VII were charged against Carter only. The record does not reveal how these charges involving Willis are related to the offenses on appeal.

Class D felony criminal confinement (of Willis), and Count VII, Class D felony intimidation (of Willis); and Count X, Class A felony robbery (of Kenney).[8]

[9] In September 2014, while Carter was incarcerated, he told Ronnie Archer ("Archer")—who was in the same cell block as Carter and dated Carter's cousin—about the robbery. According to Archer, Carter told Archer that he had shot somebody and "asked [him] how could somebody get shot in the head and don't die." (Tr. 341). Thereafter, Archer talked to the police about his conversation with Carter.

[10] The trial court held a two-day jury trial on February 2-3, 2015. Prior to trial, the State filed an amended charging information for jury purposes. In this joint information, the State charged the robbery of Spann as a lesser-included B felony; dismissed some of the charges;[9] omitted some of the charges, including Riley's charge and enhancement that needed to be bifurcated; and renumbered the remaining charges. Thus, for the purposes of trial, the joint charging information contained the following charges against Carter: Count I, Class A felony robbery (of Kenney); Count II, Class B felony robbery (of Spann); Count III, Class B felony aggravated battery (of Kenney); Count IV, Class B felony

---

[8] Counts I-V and Count X were charged against Carter, Belk, and Riley. Counts VI and VII were charged against Carter only. Count VIII, Class B felony unlawful possession of a firearm by a serious violent felon, and Count IX, Class A misdemeanor carrying a handgun without a license with an enhancement to a Class C felony based on a prior conviction, were charged against Riley only.

[9] The State dismissed the Class C felony battery (of Spann) charge against all three co-defendants and the Class D felony criminal confinement (of Willis) and the Class D felony intimidation (of Willis) charges against Carter.

criminal confinement (of Kenney); and Count V, Class B felony criminal confinement (of Spann).

[11] During the trial, Archer testified that he and Carter had been in the same cell block and had talked about "basketball, kids[,]" or "whatever[.]" (Tr. 340). Archer also testified that Carter had talked to him about a robbery[10] case and had told him that he had shot someone. Archer testified that Carter had "asked [him] how could somebody get shot in the head and don't die." (Tr. 341).

[12] The jury found Carter guilty of the five counts charged against him. The trial court held a joint sentencing hearing for Carter and his two co-defendants. When sentencing Carter, the trial court discussed Carter's criminal history and the nature and circumstances of the crime, including Carter's role in the crimes.

> We move on to Mr. Carter, Mr. Belk, Mr. Riley. I think the aggravator for all three of you[] [is] your criminal history. Your criminal history hurts. At some point your criminal history catches up to you. The facts and circumstances of this case is such that the criminal history is an aggravator so your sentences will be aggravated. The facts and circumstances of this crime, I think, apply to each of you in different and unique ways[,] and I'll try to lay that out and make it as clear as possible . . . The facts and circumstances as they apply to you, Mr. Carter -- I do view you as the ringleader. I view you as the person who led this charge -- maybe with information from Mr. Belk -- maybe Mr. Belk plotted it in some manner but I view you as the lead person

---

[10] At the beginning of Archer's testimony, the State initially asked Archer if he had talked to Carter about a "burglary" case, (Tr. 340), but when the State asked Archer about Carter's specific statements, the prosecutor referred to a "robbery" case. (Tr. 341).

into that house.  I view you as the person who was the prime mover, I guess -- the ringleader for lack of a better word.  That coupled with your criminal history results in -- in you getting a sentence that I think is appropriate and that's a 50 year sentence, sir -- it's 50 years.  Final three can be at the community corrections component but I think it's an appropriate sentence for you under these facts and circumstances.

(Tr. 475-76).  The trial court ordered that Carter's sentences on his convictions be served concurrently and imposed an aggregate executed sentence of fifty (50) years, with forty-seven (47) years in the Department of Correction and three (3) years in community corrections.[11]  Carter now appeals.

# Decision

Carter argues that the trial court erred when sentencing him.  Specifically, Carter contends that the trial court abused its discretion by:  (1) finding the nature and circumstances of the crimes, including his role in the crimes, as an aggravator when sentencing him on his Class A felony robbery conviction;[12] and (2) failing to find a hardship to his dependents as a mitigating circumstance.

Sentencing decisions rest within the sound discretion of the trial court. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g,* 875 N.E.2d

---

[11] Because the record before us reveals some irregularities relating to the sentencing documents, we will discuss the specifics of the trial court's sentencing on each conviction when we address Carter's sentencing argument.

[12] Carter has specifically limited his sentencing argument and his challenge to the trial court's application of aggravating circumstances to his sentence on Class A felony conviction only.

218 (Ind. 2007). So long as the sentence is within the statutory range, it is subject to review only for an abuse of discretion. *Id.* An abuse of discretion will be found where the decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.* A trial court may abuse its discretion in a number of ways, including: (1) failing to enter a sentencing statement at all; (2) entering a sentencing statement that includes aggravating and mitigating factors that are unsupported by the record; (3) entering a sentencing statement that omits reasons that are clearly supported by the record; or (4) entering a sentencing statement that includes reasons that are improper as a matter of law. *Id.* at 490–91.

[16] We first turn to Carter's contention that the trial court abused its discretion by using the nature and circumstances of the crimes and his role in those crimes as an aggravating circumstance to enhance his sentence on his Class A felony robbery conviction. Specifically, Carter takes issue with the trial court's reference to him being the "ringleader" of the crimes. Carter contends that he was not the ringleader and that, instead, it was Belk who was the ringleader. Thus, he argues that this aggravating circumstance was unsupported by the record. We, however, disagree.

[17] The nature and circumstances of an offense is a proper aggravating factor. *McCann v. State*, 749 N.E.2d 1116, 1120 (Ind. 2001). Here, the record reveals that Carter initiated the actions that resulted in the crimes for which he was convicted. He entered Spann's house with his gun drawn, hit Spann with his

gun, ordered Kenney and Spann to the ground, and took money from them. When Spann's phone rang, Carter grabbed the earpiece from Spann and threatened to shoot him in the face if he told someone to come to the house. Carter then phoned Belk and Riley, informing them that he had secured the victims and instructing them to come into the house. While Belk beat Kenney with a baseball bat, Carter kept his gun pointed at Kenney. Thereafter, Carter and Belk dragged Kenney into the kitchen, continued to beat him, and asked him where the "stuff" was. (Tr. 264). When Belk and Riley went to answer the door, Carter watched over Kenney and Spann in the kitchen and held them at gunpoint. Eventually, Carter shot Kenney in the face and shot at Spann as he ran away from the scene.

[18] We find no merit in Carter's argument that the aggravator was unsupported by the record. Indeed, Carter's challenge to the trial court's aggravator and argument that he was not the ringleader is nothing more than a request to review the weight that the trial court applied to this aggravating factor, which we will not do. *See Anglemyer*, 868 N.E.2d at 491 (explaining that relative weight given to aggravating and mitigating factors is not subject to review). Thus, we conclude that the trial court did not abuse its discretion by considering the nature and circumstances of the crimes, including his role in those crimes, as an aggravating factor.[13]

---

[13] Carter also suggests that the trial court abused its discretion when sentencing him because his fifty-year sentence for his Class A felony robbery conviction is twenty years longer than the maximum sentence for a Level 2 felony robbery conviction under the new criminal statutes enacted in July 2014. He contends that

[19]     Turning to Carter's argument regarding mitigators, we bear in mind that a trial court is not obligated to accept a defendant's claim as to what constitutes a mitigating circumstance. *Rascoe v. State*, 736 N.E.2d 246, 249 (Ind. 2000). A claim that the trial court failed to find a mitigating circumstance requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record. *Anglemyer*, 868 N.E.2d at 493.

[20]     Carter argues that the trial court should have found a mitigating circumstance in the fact that he has children. There is, however, no requirement that a trial court find that a defendant's incarceration would result in undue hardship to his dependents. *Benefield v. State*, 904 N.E.2d 239, 247 (Ind. Ct. App. 2009), *trans. denied*. As our Indiana Supreme Court has observed, "[m]any persons convicted of serious crimes have one or more children and, absent special circumstances, trial courts are not required to find that imprisonment will result in an undue hardship." *Dowdell v. State*, 720 N.E.2d 1146, 1154 (Ind. 1999). While Carter is the father of four children, he failed to show that he supported

---

change in the statute shows that "[t]he General Assembly clearly believes that a 50 year sentence for Robbery is excessive." (Carter's Br. 18). We, however, have previously addressed such an argument seeking leniency in sentencing based on the revised criminal code and found it to be without merit due to the savings clause contained in the revised statutes.

> Specifically, both Indiana Code section 1-1-5.5-21 and section 1-1-5.5-22 state that the new criminal code "does not affect: (1) penalties incurred; (2) crimes committed; or (3) proceedings begun" before the effective date of the new criminal code sections, i.e., July 1, 2014. These sections also provide that "Those penalties, crimes, and proceedings continue and shall be imposed and enforced under prior law as if [the new criminal code] had not been enacted." And, in no uncertain terms, these sections state: "The general assembly does not intend the doctrine of amelioration (*see Vicory v. State* [272 Ind. 683], 400 N.E.2d 1380 (1980)) to apply to any SECTION [of the new criminal code]." *Id.*

*Marley v. State*, 17 N.E.3d 335, 340 (Ind. Ct. App. 2014) (brackets in original), *trans. denied*.

the children in any manner. Indeed, the record shows that Carter was not employed and was receiving public assistance at the time of the offenses and that he had not had any taxable income since 2002. The record also shows that Carter's four children, whom he had with four different women, all lived with their mothers and that Carter was past due on his child support for these children. Because Carter has failed to show that this proffered mitigator was significant, the trial court did not abuse its discretion by declining to find it as a mitigating circumstance.[14] *See, e.g.*, *Anglin v. State*, 787 N.E.2d 1012, 1018 (Ind. Ct. App. 2003) (finding no abuse of discretion where evidence established that defendant wished to spend time with his daughter but nothing indicated her degree of reliance upon him), *trans. denied*.

[21] While we conclude that the trial court did not abuse its discretion when imposing the sentence for Carter's Class A felony robbery conviction, we must address some other sentencing irregularities not raised by the parties. First, there is a lack of clarity in the trial court's sentencing documents regarding the entry of judgments of conviction and corresponding sentencing. Despite the problems with the sentencing documents, the record, however, is clear that the jury found Carter guilty as charged in the amended charging information that

---

[14] Carter also suggests that the trial court abused its discretion by failing to find his acceptance of responsibility as a mitigating circumstance. However, Carter has waived this argument because he failed to provide any cogent argument and citation to authority as required by Appellate Rule 46(A)(8)(a). *See McMahon v. State*, 856 N.E.2d 743, 751 (Ind. Ct. App. 2006) (concluding that the defendant waived sentencing argument for failure to make a cogent argument).

was filed just prior to trial. Specifically, the jury found Carter guilty of: Count I, Class A felony robbery (of Kenney); Count II, Class B felony robbery (of Spann); Count III, Class B felony aggravated battery (of Kenney); Count IV, Class B felony criminal confinement (of Kenney); and Count V, Class B felony criminal confinement (of Spann).

[22] At the sentencing hearing, the trial court discussed how it would possibly handle potential double jeopardy concerns with the convictions. Specifically, the trial court stated:

> Before we get to argument I just want to get the perspective and I should have given all -- all the parties a head's up on this -- how do you view running these counts -- the -- if I'm runnin[g] under that A those robberies -- that robbery becomes a C. The confinements bump down to D's and then the agg batt really is -- is really part of parcel of that A so I don't know how you view the agg batt -- does it reduce to a C or do you think that stands on its own?

(Tr. 442). The prosecutor pointed out that the robbery conviction for the robbery of Kenney was a Class A felony conviction and that the robbery conviction for the robbery of Spann was a Class B felony conviction. The parties then agreed that the Class B felony aggravated battery conviction would "disappear" because it was an element of the Class A robbery conviction. (Tr. 444). The trial court then stated it would "merge 3 into 1 and w[ould] sentence on the remaining counts." (Tr. 445). Thereafter, the trial court orally pronounced the sentence on the Class A felony robbery conviction for Carter and his co-defendants. For Carter, the trial court imposed a fifty (50) year

executed sentence, with forty-seven (47) years in the Department of Correction and three (3) years in community corrections. The trial court stated that, for each of the defendants, it would be ordering the remaining sentences to be served concurrently to the sentence on this Class A felony robbery conviction. The trial court, however, did not orally pronounce a sentence on the remaining counts during the sentencing hearing. Instead, the trial court stated that it would "break down all the remaining counts in the sentencing [order] but [that it was] running them all as one larger criminal episode[.]" (Tr. 478). The trial court stated that while there were "two victims and [it] normally like[d] to apportion per victim -- [it would] not in this case." (Tr. 478-79).

[23] From reading the transcript of the sentencing hearing, we observe that, ultimately, the trial court merged Carter's Class B felony aggravated battery conviction into his Class A felony robbery conviction and imposed a fifty (50) year sentence on that Class A felony conviction. A review of the sentencing hearing also reveals that the trial court intended to enter sentences on the Class B felony criminal confinement convictions as Class D felonies and to enter a sentence on the Class B felony robbery (of Spann) conviction. Additionally, as discussed above, the trial court stated that it would order all sentences be served concurrently.

[24] However, the sentencing order, abstract of judgment, and chronological case summary do not reflect this intended sentencing. Specifically, these court documents indicate that the trial court entered the following judgments of conviction and imposed the following sentences: (1) robbery of Kenney as a

Class A felony with a sentence of fifty (50) years; (2) robbery of Spann as a Class A felony with a "Finding of Guilty of a Lesser Included" and with a sentence of twenty (20) years; (3) Class B felony aggravated battery that was "[m]erged" into the Class A felony robbery of Kenney conviction; (4) Class B felony criminal confinement of Kenney with a sentence of 545 days; and (5) Class B felony criminal confinement of Spann with a sentence of 545 days. (App. 15, 17).

[25] These sentencing documents, therefore, have three issues that need to be corrected. First, in regard to the trial court's act of merging the Class B felony aggravated battery into the Class A felony robbery, which were convictions for which the trial court seems to have entered judgments of conviction, we note that "[a] trial court's act of merging, without also vacating the conviction, is not sufficient to cure a double jeopardy violation" and that such a violation cannot be remedied by the "practical effect" of merging after a conviction has been entered. *Gregory v. State*, 885 N.E.2d 697, 703 (Ind. Ct. App. 2008), *trans. denied. See also Green v. State*, 856 N.E.2d 703, 704 (Ind. 2006) (explaining that "a merged offense for which a defendant is found guilty, but on which there is neither a judgment nor a sentence, is 'unproblematic' as far as double jeopardy is concerned"). Because it appears from the record that the trial court entered judgment of conviction on Class B felony aggravated battery prior to merging this conviction, we remand this cause to the trial court with instructions to vacate Carter's judgment of conviction on this offense.

[26] Second, the trial court's sentencing documents need to be corrected to reflect that Carter was convicted of robbery of Spann as a Class B felony. Prior to the commencement of trial, the robbery charge against Spann was amended to a Class B felony charge. The jury found Carter guilty of this robbery as Class B felony, and the trial court sentenced him on the conviction to twenty years. However, the sentencing documents indicate that the judgment of conviction was entered as a Class A felony. Thus, the abstract of judgment, sentencing order, and chronological case summary should be corrected to reflect that the judgment of conviction of this robbery of Spann was entered as a Class B felony.

[27] Third, the trial court's sentencing documents need to be corrected to reflect that the trial court entered judgments of conviction on the criminal confinement convictions as Class D felonies instead of Class B felonies. While the jury found Carter guilty of these criminal confinement convictions as Class B felonies, the trial court sentenced him on these as Class D felonies due to double jeopardy concerns and imposed a sentence of 545 days on each conviction. However, the sentencing documents indicate that the judgments of conviction on these criminal confinement offenses were entered as Class B felonies. The entry of judgment of conviction as a Class B felony with a sentence of 545 days is contrary to the statutory sentencing range set forth for a Class B felony. *See* IND. CODE § 35-50-2-5 (providing that the sentencing range for a Class B felony is between six (6) and twenty (20) years). Thus, the abstract of judgment, sentencing order, and chronological case summary should be

corrected to reflect that the judgments of conviction for these criminal confinement offenses were entered as Class D felonies.

[28] In summary, the sentencing order, abstract of judgment, and chronological case summary should be corrected to reflect that: (1) the Class B felony aggravated battery conviction was vacated; (2) Carter was convicted of robbery of Spann as a Class B felony and that the trial court entered judgment of conviction as a Class B felony; and (3) the trial court entered judgments of conviction and sentences on the criminal confinement convictions as Class D felonies instead of Class B felonies.[15]

[29] Finally, we express our concern with the trial court's failure to impose and pronounce sentencing on all of Carter's convictions during the sentencing hearing. INDIANA CODE § 35-38-1-5 provides:

> When the defendant appears for sentencing, the court shall inform the defendant of the verdict of the jury or the finding of the court. The court shall afford counsel for the defendant an opportunity to speak on behalf of the defendant. The defendant may also make a statement personally in the defendant's own behalf and, before pronouncing sentence, the court shall ask the defendant whether the defendant wishes to make such a

---

[15] Additionally, we note that the abstract of judgment and sentencing order contain all original charges filed against Carter, even though three of the charges was ultimately dismissed. We acknowledge that the abstract of judgment form, which indicates that it is a "State Form" from the Indiana Department of Correction, appears to add to the confusion in the sentencing documents. (App. 18). The abstract of judgment form, in Part I, requires a trial court list the "charge[s]" against a defendant, instead of the convictions. (App. 18). Then, Part II of the form requires the trial court to list the sentences "[a]s a result of the above convictions[.]" (App. 18). However, the charges listed in Part I are not convictions. Because this abstract of judgment form is used by the Department of Correction for incarceration duration and subsequent release date information, only the actual judgments of conviction and resulting sentences are relevant.

statement. *Sentence shall then be pronounced, unless a sufficient cause is alleged or appears to the court for delay in sentencing.*

[30] (Emphasis added). The record does not reveal "a sufficient cause" for the delayed pronouncement of sentencing as the parties did not request a delay in the pronouncement of sentencing nor did the trial court provide a reason why it was waiting to "break down all the remaining counts in the sentencing" order. (Tr. 478). At the same time, the parties did not object when the trial court failed to pronounce the remaining sentencing during the hearing. Therefore, we will not remand for a new sentencing hearing. However, we would encourage the trial court, for all future sentencing, to pronounce sentencing on *all* convictions during a sentencing hearing in accordance with INDIANA CODE § 35-38-1-5.

[31] Affirmed and remanded with instructions.

Vaidik, C.J., concurs.

Robb, J., concurs in result without opinion.