## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 07 2015, 9:02 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Leanna Weissmann
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

James E. Pugh,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

December 7, 2015

Court of Appeals Case No.
15A04-1503-CR-131

Appeal from the Dearborn
Superior Court

The Honorable Jonathan N.
Cleary, Judge

Trial Court Cause No.
15D01-1409-FA-52

**Baker, Judge.**

[1] James Pugh appeals the sentence he received for Class A Felony Dealing in a Controlled Substance.[1] He asks us to revise his sentence. Finding his sentence not inappropriate, we affirm.

## Facts

[2] In May 2014, an undercover police officer heard from a confidential informant that Pugh was dealing drugs. The officer found the accusations particularly serious because Pugh was operating out of a family housing complex. Even more troubling, the informant alleged that Pugh was trading drugs for sex with teenage girls—Pugh has a prior conviction for rape involving an underaged victim.

[3] On May 28, 2014, the officer arranged to purchase Suboxone[2] strips from Pugh. The officer arrived at the housing complex and Pugh directed him into a bedroom. There, the two agreed to exchange five eight-milligram strips for one hundred dollars. While Pugh was cutting the strips open, he explained that he had to make each cut unique because one time he opened a "sh\*t load of them" with a single slice, which made his doctor suspicious. Tr. 40. Before the officer left, Pugh's six-year-old daughter entered the room and hugged her father.

---

[1] Ind. Code § 35-48-4-2.

[2] These strips were prescribed to Pugh's wife and contain buprenorphine, which is an opioid and a controlled substance.

[4] On September 11, 2014, the State charged Pugh with two counts: (i) Class D felony neglect of a dependent, and (ii) dealing in a schedule III controlled substance within 1,000 feet of a family housing complex. The statute in effect at the time allowed the State to charge the latter offense as a Class A felony. Ind Code § 35-48-4-2(b)(2)(B)(iii) (2011). Effective July 1, 2014, our Legislature amended this statute to remove the family-housing-complex enhancement—if Pugh had committed his crime a little over a month later than he did, the State's charge would have been a Level 6 felony with a two-and-a-half-year maximum sentence. I.C. § 35-48-4-2(a); Ind. Code § 35-50-2-7(b). If the State had sought an enhancement for the presence of Pugh's daughter, Pugh might have been charged with a Level 5 felony with a six-year maximum sentence. I.C. § 35-50-2-6(b). But since Pugh committed his crime when he did, he faced a sentencing range of twenty to fifty years, with an advisory sentence of thirty years. I.C. § 35-50-2-4.

[5] On January 26, 2015, Pugh pleaded guilty to dealing in a controlled substance as a Class A felony, and the State agreed to dismiss the neglect charge. Since this was an open plea, the trial court retained discretion in its sentencing decision. After a sentencing hearing, on February 24, 2015, the trial court sentenced Pugh to the advisory sentence of thirty years executed. Pugh now appeals.

## Discussion and Decision

[6]     Pugh has one argument on appeal: that his thirty-year sentence is inappropriate and should be reduced.  He argues that the legislature, in reducing penalties for drug offenses, was following our Constitution's demand that "[t]he penal code shall be founded on the principles of reformation, and not of vindictive justice." Ind. Const. art. I, § 18.  Although his argument is not directly constitutional in nature, he argues that this constitutional provision should inform our review process under Indiana Appellate Rule 7(B).[3]

[7]     Indiana Appellate Rule 7(B) provides, "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender."  The principal role of such review is to attempt to leaven the outliers, but not to achieve a perceived "correct" sentence. *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008).  Sentencing is principally a discretionary function in which the trial court's judgment should receive considerable deference.  *Id.* at 1222.

---

[3] It has long been held that this constitutional provision applies only to the entire scheme of criminal law and not to individual portions within the scheme.  In *Driskill v. State*, our Supreme Court was faced with the question of whether the death penalty violated the constitutional mandate to reform.  7 Ind. 338 (1855).  The Court acknowledged, in something of an understatement, that the penalty of death was an "instance in the law in which the purpose of reformation is not prominent," but found that the mandate, "when properly construed, requires the penal laws to be so framed as to protect society, and at the same time, *as a system*, to inculcate the principle of reform."  *Id.* at 343 (emphasis added).

[8]     Pugh acknowledges that the old sentencing scheme applies to his sentence, and does not ask to be sentenced under the Level 6 guidelines. Instead, he argues that the changes in sentencing length should persuade us to revise his sentence to the low end of the Class A felony sentencing spectrum.

[9]     This we cannot do. In *Marley v. State*, 17 N.E.3d 335 (Ind. Ct. App. 2014), we faced a similar argument. After noting that the sentencing scheme explicitly makes clear that it does not affect crimes committed before the effective date, Ind. Code § 1-1-5.5-21, -22, and that the doctrine of amelioration does not apply, *id.*, we held, "It is abundantly clear from these statutes that the General Assembly intended the new criminal code to have no effect on criminal proceedings committed prior to the enactment of the new code." *Marley*, 17 N.E.3d at 340. This is also "true with regard to considering the appropriateness of a sentence under Appellate Rule 7(B); we are to proceed as if the new criminal code had not been enacted." *Id.*

[10]    Turning to the nature of Pugh's offense, we find no reason to revise his sentence. Pugh was selling illegal substances from his residence in a family housing complex. He transacted in these substances in front of his six-year-old child. This was not an isolated incident; Pugh's experience selling these substances informed his decision to cut each Suboxone strip in a unique way.

[11]    Turning to Pugh's character, we again find no reason to revise his sentence. He is an experienced drug dealer who allegedly exchanged drugs for sex with teenagers. This is particularly troubling given his previous conviction for the

rape of an underage victim. Pugh did not appear particularly forthcoming at his sentencing hearing—despite the officer's testimony that Pugh cut each strip individually so that the doctor would not be suspicious, Pugh testified, "This is the only time I've ever sold drugs." Tr. 81. Pugh has also committed eleven criminal offenses, and at the time of his arrest he had two outstanding warrants in Hamilton County.

[12] Although we can understand the frustration of a defendant who, if he had waited to commit his crime, would have received a lower sentence, "[t]he time of a crime is selected as an act of free will by the offender." *Gee v. State,* 508 N.E.2d 787, 789 (Ind. 1987). Pugh's argument amounts to an attempt to use Rule 7(B) to bypass the savings clause adopted by our legislature in the new sentencing scheme. His attempt fails.

[13] The judgment of the trial court is affirmed.

Bradford, J., and Pyle, J., concur.