## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 10 2017, 8:43 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Leanna Weissmann
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Eric P. Babbs
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Todd Norman,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

August 10, 2017

Court of Appeals Case No.
69A05-1611-CR-2661

Appeal from the Ripley Circuit Court

The Honorable Ryan King, Judge

Trial Court Cause No.
69C01-1602-F2-1

**Barnes, Judge.**

# Case Summary

Todd Norman appeals his conviction for Level 2 felony possession of methamphetamine with the intent to deliver. We affirm.

# Issues

Norman presents three issues on appeal, which we restate as:

    I.    whether the trial court abused its discretion by allowing the State to question Norman about his missing cell phone;

    II.    whether the State presented sufficient evidence to convict Norman of Level 2 felony possession of methamphetamine with the intent to deliver; and

    III.    whether the sentence imposed was inappropriate in light of the nature of the offense and the character of the offender.

# Facts

On February 17, 2016, Versailles Town Marshall Joseph Mann and Ripley County Probation Officer Ethan Back conducted a routine probation visit at Norman's home. After some time had passed, Norman opened the door and allowed the officers to enter. Upon entering, Officer Back noticed alcohol inside Norman's home, which violated the terms of his probation and gave the officers a reason to inspect the home further. Marshall Mann discovered a bag that contained a white crystalline substance under a couch cushion. The substance was later identified as 12.59 grams of methamphetamine. Mann

testified that this amount equals about 125 individual uses of the drug. After the discovery of methamphetamine, Mann contacted the Batesville Police Department, and Batesville Detective Blake Roope arrived on the scene. Mann then discovered a digital scale that contained residue similar in appearance to methamphetamine. Detective Roope decided not to have the residue on the scale tested. Officer Back and Detective Roope later observed a blue container sitting on a ladder inside one of Norman's rooms. Eight thousand dollars in cash was found inside the container. Officers also found $500 inside Norman's pockets.

[4] On February 18, 2016, the State charged Norman with Level 2 felony possession of methamphetamine with the intent to deliver and Level 4 felony possession of methamphetamine. On August 22, 2016, the State filed a motion to amend the Level 2 felony charge and dismiss the Level 4 felony charge. The trial court granted the motion, and a jury trial was held on August 23-24, 2016. During the trial, Mann testified that drug dealers often use scales to measure product intended for sale. He also testified that buyers of illegal substances typically use cash for their transactions. Mann also stated that methamphetamine is typically packaged in half gram to one gram quantities, but that it is not unusual to see it packaged in quantities of three to three-and-one-half grams. Mann also testified that a gram of methamphetamine typically costs $100 and three grams cost between $225 and $250. He also testified that dealers of illegal substances typically keep digital records of sales on phones and other electronic devices.

[5] Norman testified in his own defense that the methamphetamine found in his home did not belong to him but that he entertains friends often and one of them could have left it. Norman also testified that he plays darts competitively and uses the scale to measure the weight of the darts. On cross-examination, the State questioned Norman about his missing cell phone; Norman objected to this questioning. The trial court overruled the objection. Norman then testified that his phone was missing. He also testified that he remembered talking to his sister about the phone, but he denied asking her to destroy it. Norman stated, "That's, I don't know if I, I don't know exactly what I said, but it wasn't nothing that drastic." Tr. Vol. III p. 235. Norman claimed that he did not trust banks and as such withdrew his paychecks every month. He also testified that he had recently made a cash withdrawal to buy a new television set.

[6] The jury found Norman guilty of Level 2 felony possession of methamphetamine with the intent to deliver. The trial court sentenced Norman to twenty-seven-and-one-half years in the Department of Correction with five years suspended to probation. Norman now appeals.

## Analysis

### I. Admission of Evidence

[7] Norman argues that the trial court abused its discretion in allowing the State to question him about his missing cell phone. We review the admission of evidence for an abuse of discretion. *Wilson v. State,* 765 N.E.2d 1265, 1272 (Ind. 2002). An abuse of discretion occurs "where the decision is clearly against the logic and effect of the facts and circumstances." *Smith v. State,* 754

N.E.2d 502, 504 (Ind. 2001). In reviewing the admissibility of evidence, we consider only the evidence in favor of the trial court's ruling. *Whiteside v. State,* 853 N.E.2d 1021, 1025 (Ind. Ct. App. 2006).

[8] Norman contends that the State made a "tenuous connection by implying a lost cell phone might have shown evidence of drug dealing," arguing that the testimony "bore no relevance to Norman's intent concerning the bag of methamphetamine." Appellant's Br. p. 16. Indiana Evidence Rule 401(a) provides that, "evidence is relevant if: it has any tendency to make a fact more or less probable than it would be without the evidence." The State presented testimony that dealers of illegal substances often keep records of sales on their cell phones. The State questioned Norman as to whether he had asked his sister to destroy his cell phone to hide such evidence. Although Norman denied the allegations, he acknowledged that a cell phone does have the ability to store information from texts and emails and that his phone was missing.

[9] Norman also argues that, even if the evidence had relevance, "The implication that Norman destroyed evidence of wrongdoing came with too great a risk of prejudice." Appellant's Br. p. 16. Evidence Rule 403 provides, "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." "All relevant evidence is inherently prejudicial in a criminal prosecution." *Carter v. State,* 766 N.E.2d 377, 382 (Ind. 2002), *reh'g denied.* "The trial court has wide latitude, however, in weighing the probative value of

the evidence against the possible prejudice of its admission." *Goldsberry v. State,* 821 N.E.2d 447, 455 (Ind. Ct. App. 2005) (quoting *Evans v. State*, 727 N.E.2d 1072, 1079 (Ind. 2000)). The State's questioning of Norman about his cell phone was not unduly prejudicial. Norman contends that, "The State implied that Norman actively worked to destroy his cell phone to cover up his illegal activities." Appellant's Br. p. 18. However, when questioned about his missing phone, he did not admit that his phone contained any evidence of drug dealing and further denied asking his sister to destroy it. The probative value of the testimony was not substantially outweighed by unfair prejudice.

[10] Finally, Norman also contends that the trial court abused its discretion in allowing this evidence because it was improper evidence of a bad act. Specifically, Norman argues that, "The State used the missing cell phone to plant a seed in jurors' minds that the phone had been destroyed because it contained evidence of drug dealing." *Id.* at 15. Evidence Rule 404(b)(1) provides that, "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." This kind of evidence is admissible, however, if it is used to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *See* Ind. Evidence Rule 404(b)(2). The rationale for the prohibition against bad act and character evidence is that the jury is precluded from making the forbidden inference that the defendant had a criminal propensity and therefore engaged in the charged conduct. *Duvall v. State,* 978 N.E.2d 417, 423 (Ind. Ct.

App. 2012), *trans. denied*. "A trial court faced with a 404(b) question must: (1) decide if the evidence of other crimes, wrongs, or acts is relevant to the matter at issue other than the defendant's propensity to commit the charged act; and (2) balance the probative value of the evidence against its prejudicial effect pursuant to Rule 403." *Hicks v. State,* 690 N.E.2d 215, 219 (Ind. 1997).

[11] There is nothing inherently wrong or criminal about destroying one's own cell phone. Standing alone, it would not be evidence of Norman's "propensity" to engage in methamphetamine dealing or criminal conduct more generally. The only sense in which Norman's destruction of his cell phone could be labeled a "bad act" is if it implied he was attempting to conceal evidence of drug dealing. As a general rule, evidence of a defendant's attempts to conceal evidence is admissible as revealing consciousness of guilt. *Bennett v. State*, 787 N.E.2d 938, 946 (Ind. Ct. App. 2003), *trans. denied*; *Robinson v. State*, 720 N.E.2d 1269, 1272 (Ind. Ct. App. 1999). *See also Larry v. State*, 716 N.E.2d 79, 81 (Ind. Ct. App. 1999) (holding evidence that defendant battered witness and called him a "snitch" was admissible under Evidence Rule 404(b) as evidence of "knowledge" or consciousness of guilt). In sum, the trial court did not abuse its discretion in allowing evidence regarding destruction of Norman's cell phone; it was admissible under Evidence Rules 401, 403, and 404(b).

## II. Sufficiency of Evidence

[12] Norman argues that the evidence was insufficient to sustain his conviction for possession of methamphetamine with the intent to deliver. When reviewing a claim of insufficient evidence, we neither reweigh evidence nor judge the

credibility of witnesses. *Rutherford v. State,* 866 N.E.2d 867, 871 (Ind. Ct. App. 2007). We consider only the evidence favorable to the judgment and any reasonable inferences to be drawn therefrom. *Glotzbach v. State,* 783 N.E.2d 1221, 1226 (Ind. Ct. App. 2003). We will affirm a conviction unless we conclude that no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Stokes v. State,* 922 N.E.2d 758, 763 (Ind. Ct. App. 2010), *trans. denied*.

[13] Pursuant to Indiana Code Section 35-48-4-1.1, a person who possesses methamphetamine with the intent to deliver commits a Level 2 felony if "the amount of the drug involved is at least ten grams." Norman argues that, although the State presented evidence that he possessed more than ten grams of methamphetamine, the evidence to prove intent to deliver was "weak circumstantial evidence showing a suspicious possibility, but not a legal certainty." Appellant's Br. p. 22. The mental state of intent can only be established by considering the behavior of the relevant actor, the surrounding circumstances, and the reasonable inferences to be drawn therefrom. *Richardson v. State,* 856 N.E.2d 1222, 1227 (Ind. Ct. App. 2006), *trans. denied*. As a general premise, possession of a large amount of a narcotic substance is circumstantial evidence of intent to deliver. *Cline v. State,* 860 N.E.2d 647, 650 (Ind. Ct. App. 2007). The higher the amount of narcotics found in a person's possession, the stronger the inference that he intended to deliver it and not consume it personally. *Id. See Davis v. State,* 791 N.E.2d 266, 270 (Ind. Ct. App. 2003), *trans. denied*. Other circumstances that may support a finding of drug dealing

instead of mere possession include the defendant's possession of a large amount of cash and indicia of dealing, such as scales. *See Hape v. State,* 903 N.E.2d 977, 997-98 (Ind. Ct. App. 2009), *trans. denied*; *Richardson,* 856 N.E.2d at 1227-28.

[14] Mann testified that methamphetamine is usually sold in half gram to one gram quantities for a typical user. Mann also testified that some users buy "eight ball" quantities of methamphetamine, which usually contain three to three-and-one-half grams. Tr. Vol. III p. 37. He also testified that scales are typically used to weigh the product for sale and that buyers of illegal substances typically use cash for their purchases. Norman had 12.59 grams of methamphetamine, which equals approximately 125 uses of the drug, $8,500 in cash, and a scale with residue similar in appearance to methamphetamine in his possession. The State presented sufficient evidence to sustain his conviction.

### III. Inappropriate Sentence

[15] We now assess whether Norman's sentence is inappropriate in light of the nature of the offense and the character of the offender under Indiana Appellate Rule 7(B). *See Anglemyer v. State*, 868 N.E.2d 482, 491 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). Although Rule 7(B) does not require us to be "extremely" deferential to a trial court's sentencing decision, we still must give due consideration to that decision. *Rutherford*, 866 N.E.2d at 873. We also understand and recognize the unique perspective a trial court brings to its sentencing decisions. *Id.* "Additionally, a defendant bears the burden of persuading the appellate court that his or her sentence is inappropriate." *Id.*

[16] The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). We "should focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Id.* Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad other factors that come to light in a given case. *Id.* at 1224. When reviewing the appropriateness of a sentence under Rule 7(B), we may consider all aspects of the penal consequences imposed by the trial court in sentencing the defendant, including whether a portion of the sentence was suspended. *Davidson v. State*, 926 N.E.2d 1023, 1025 (Ind. 2010).

[17] The advisory sentence is the starting point to determine the appropriateness of the sentence. *See Anglemyer,* 868 N.E.2d at 494. Pursuant to Indiana Code Section 35-50-2-4.5, a conviction of a Level 2 felony is punishable by ten to thirty years in prison, with an advisory sentence of seventeen and one-half years. Norman's sentence was above the advisory but below the maximum sentence available. The trial court also suspended five years of his sentence to probation.

[18] In regard to the nature of the offense, Mann and Officer Back went to Norman's residence to conduct a routine probation visit. When Norman finally

answered the door, Officer Back immediately observed several containers of alcohol, which prompted a more extensive search. Mann discovered 12.59 grams of methamphetamine and a scale with residue similar in appearance to methamphetamine. The amount of methamphetamine equaled approximately 125 individual uses and was worth over $1,200. Officers also found $8,500 in cash. The evidence most favorable to the verdict indicates that Norman was engaged in a significant drug dealing operation. Norman has not persuaded us that the nature of his offense warrants a revised sentence.

[19] As for the character of the offender, Norman argues that, although he has a criminal history, most of his convictions stem from his addiction to alcohol and drugs. Norman has misdemeanor convictions for resisting law enforcement, operating a vehicle while intoxicated endangering a person, animals running at large, utility tampering, and public intoxication. Norman also has been convicted of felony operating a vehicle while intoxicated and operating a vehicle as a habitual traffic violator. He was on probation at the time he committed the current offense, and he has had numerous probation violations in the past. Not only did he violate probation with the current offense, but officers also found alcohol in his home, and he tested positive for methamphetamine.

[20] We also consider Norman's history of alcohol and drug use. Although we recognize that a history of substance abuse may be a mitigating circumstance, where a defendant is aware of a substance abuse problem but has not taken appropriate steps to treat it, substance abuse does not weigh in favor of a lesser

sentence. *See Marley v. State,* 17 N.E.3d 335, 341 (Ind. Ct. App. 2014), *trans. denied*; *Hape,* 903 N.E.2d at 1002 (Ind. Ct. App. 2009); *Bryant v. State,* 802 N.E.2d 486, 501 (Ind. Ct. App. 2004), *trans. denied*; *Bennett,* 787 N.E.2d at 948. Norman only contends that he is struggling with a "treatable problem." Appellant's Br. p. 30. However, he has been convicted of several alcohol and drug related offenses and has only attended court-ordered treatment five or six years prior to the current offense. Norman has not shown any initiative in seeking treatment for his substance abuse issues.

[21]  Given the nature of the offense and Norman's character, we are not persuaded that the sentence imposed was inappropriate.

# Conclusion

[22]  The trial court did not abuse its discretion when it allowed the State to question Norman about his missing cell phone. The State presented sufficient evidence to support Norman's conviction for Level 2 felony possession of methamphetamine with the intent to deliver, and Norman has failed to show that the sentence imposed was inappropriate. We affirm.

[23]  Affirmed.

Baker, J., and Crone, J., concur.